

FILED BY_____ D.C.

AUG 21 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. PIERCE

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Steven Greer,

      Plaintiff,

v.

Robert Hoying;
Brent Crawford; and
Noble Park Properties LLC

      Defendants

Case No. 2:24-cv-14258-AMC

<u>AMENDED COMPLAINT</u>

1. Negligence

2. Negligent Infliction of Emotional
   Distress

3. Invasion of Privacy

4. Defamation

5. Breach of Contract

6. CSPA Violation

<u>JURY TRIAL</u>

Plaintiff, pursuant to Rule 3 of the Federal Rules of Civil Procedure, files the following

Complaint against Defendants. Plaintiff seeks relief for damages.

# **CONTENT**

CONTENT ......................................................................................................... ii

COMPLIANCE with ORDER ............................................................................ 1

INTRODUCTION .............................................................................................. 1

PARTIES ............................................................................................................ 2

    Steven Greer ................................................................................................. 2

    Robert Hoying .............................................................................................. 3

    Brent Crawford ............................................................................................ 3

    Noble Park Properties, LLC ........................................................................ 3

JURISDICTION and VENUE ........................................................................... 4

RESPONDEAT SUPERIOR .............................................................................. 6

FACTUAL ALLEGATIONS ............................................................................. 7

    The Negligent and Illegal Entry of Plaintiff's Room and Invasion of Privacy .............. 10

    The Initial Defamation ................................................................................ 13

    Negligent Handling of the Incident ............................................................ 14

    This Was Part of a Post-COVID Hotel Industry Scam ............................... 15

    The Most Recent Defamation and Fraud .................................................... 17

EFFORTS by PLAINTIFF to AVOID LITIGATION ...................................... 18

NOBLE PARK PROPERTIES, LLC is an ALTER EGO ................................. 19

The INDIVIDUAL DEFENDANTS are not IMMUNE .................................... 21

    Piercing the Corporate Veil ........................................................................ 21

    Hoying and Crawford are Liable Per Ohio Law ......................................... 22

ABOUT the EVIDENCE .................................................................................. 23

COUNT 1: NEGLIGENCE ............................................................................... 23

COUNT 2: NEGLIGENT INFLICTION of EMOTIONAL DISTRESS ........... 25

COUNT 3: INVASION of PRIVACY ............................................................... 29

ii

COUNT 4: DEFAMATION ............................................................................................... 31

    The Statute of Limitations for Defamation ................................................................... 31

    The Elements of Defamation ....................................................................................... 32

    The Elements of *Per Se* Defamation ............................................................................ 33

    Defendants Defamed Plaintiff with Malice ................................................................. 34

COUNT 5: BREACH of CONTRACT ............................................................................ 36

    Which State Contract Law Should be Applied? ........................................................... 36

    The Elements of the Contract ..................................................................................... 37

    Definition of Breach of Contract ................................................................................ 37

COUNT 6: OHIO CSPA VIOLATION ........................................................................... 39

JURY DEMAND ............................................................................................................. 40

REQUEST FOR RELIEF ............................................................................................... 41

# COMPLIANCE with ORDER

1.      This Amended Complaint was created by Order (August 13, 2024 (ECF 7)). It complies with that Order by: (a) making specific allegations about the citizenship of the owners of the LLC defendants, (b) adds numbering to the paragraphs, complying with Fed. R. Civ. P. 10(b), and (c) references to paragraphs that support the counts.

# INTRODUCTION

2.      This is a Complaint by an individual plaintiff that also exposes a wider scheme perpetrated by the hotel industry. To evade landlord-tenant laws that should govern their long-term-stay "hotels", the hotels have adopted illegal strategies to scare tenants out of their apartments so as to avoid local laws that limit the time of stay for "hotel" guests. That is what happened here when Defendants fabricated a story about "altercations" committed by Plaintiff. When that fails, hotels then move to other illegal options.

3.      While this is not a class action suit, Plaintiff is not alone. Negligence related to hotel guest privacy is rampant.

4.      For example, Plaintiff recently learned of a similar incident happening to a man in Texas staying at another "Home2 Suites by Hilton". In that incident in 2024, after the Hilton reservations systems crashed, the Texas hotel staff broke into the man's apartment (and others in the same hotel) while he was undressed, forcing him to draw his firearm thinking he was being robbed. As another example, several years ago, ESPN sports personality Erin Andrews had her privacy severely violated when negligence by the hotels allowed nude video of her to be captured multiple times over a span of years.

5.      The assault that occurred to Plaintiff in this instant case forced him to relocate while he was in the middle of handling a medical crisis of his father with dementia. It could not have happened at a worse time. His father subsequently became the victim of improper care

in a nursing home and was killed.

6.     As is so often the case, Defendants made matters worse by trying to cover up for their actions. They engaged in a strategy of defamation that violated other torts.

7.     Plaintiff has been lenient with Defendants regarding his demands. They have abused that generosity. Now, Plaintiff has no other recourse but to sue.

# **PARTIES**

## **Steven Greer**

8.     Plaintiff, Steven Greer ("Plaintiff"), is an individual domiciled in Florida since 2019. This fact was established in *Greer v. Fox News* 1:20-cv-05484 (Doc No. 121) S.D.N.Y. 2020. That Order ruled on Defendants' Motion to Dismiss, which argued diversity jurisdiction did not apply. Plaintiff was ruled to be domiciled in Florida. The 2d. Cir. heard this case as well in *Greer v. Fox News Media*, No. 22-1970-cv (2d Cir. Mar. 29, 2023).[1]

9.     Plaintiff temporarily lived in Ohio during the year of 2022, staying in an extended-stay hotel doing business as "Home2 Suites by Hilton" (a defendant), on an emergency basis to care for his ailing father.

10.     Plaintiff is a medical doctor licensed in several states and in good standing. This fact is relevant to the *per se* defamation claims.[2,3]

---

[1] Plaintiff defeated two motions to dismiss in this case. However, he appealed the magistrate report that removed key causes of action. Plaintiff lost in the 2d. Cir. on theory that federal copyright law preempted the state law claims. Plaintiff disagrees. The case continues in California court with a decision due in November.
[2] Of note, information about Plaintiff has been scrubbed from the Internet. Since 2012, after writing Wall Street Journal Op-Eds critical of President Obama, unbeknownst to him until this year, Plaintiff has been the target of the vast censorship apparatus exposed in the Supreme Court case of *Murthy v. Missouri*, 144 S. Ct. 7, 217 L. Ed. 2d 178 (2023) and District Court case *Kennedy v. Biden*, No. 3: 23-CV-00381 (W.D. La. Feb. 14, 2024). After the Supreme Court lifted the injunction in *Murthy v. Missouri*, those bad actors escalated their censorship. Plaintiff had his Amazon.com-published book critical of Anthony Fauci removed (i.e. digital book burning) from the market despite having full copyright registration and it having been sold on the market for three-years (see Plaintiff's brief in *Kennedy v. Biden*, Document No. 42). Now, search engines are removing almost all results for "Steven E. Greer, MD", etc. For example, Steven M. Greer, MD, the UFO believer, is what turns up instead.
[3] List of news articles, etc. on Plaintiff that are no longer found by Internet searches
https://greerjournal.com/test-2/

**Robert Hoying**

11.    Defendant Robert Hoying is an individual who co-owns Noble Park Properties. He is domiciled in Ohio and is a citizen of the United States of America.[4]

12.    Mr. Hoying's personal address is 9233 Hyland Croy Rd Plain City, OH 43064. His business address is 555 Metro Place North, Suite 600, Dublin, OH 43017, and Phone (614) 335-2020.

13.    Robert Hoying does not enjoy immunity from the action of the co-defendant Limited Liability Corporation, which he owns. Actions by Hoying and the improper management of the LLC have pierced the corporate veil.

**Brent Crawford**

14.    Defendant Brent Crawford is an individual who co-owns Noble Park Properties. He is domiciled in Ohio and a citizen of the United States of America.

15.    Mr. Crawford's personal address is 95 N Riverview St Unit 512 Dublin, OH 43017. His business address is 555 Metro Place North, Suite 600, Dublin, OH 43017, and Phone (614) 335-2020.

16.    Like his business partner Robert Hoying, Brent Crawford also does not enjoy immunity from the action of the co-defendant Limited Liability Corporation, which he owns. Actions by Hoying and the improper management of the LLC have pierced the corporate veil.

**Noble Park Properties, LLC**

17.    Defendant Noble Park Properties, LLC ("Noble Park") is an Ohio corporate entity with an office address listed as at 555 Metro Place North, Suite 600, Dublin, Ohio 43017. It

---

[4] Mr. Hoying was the quarterback for the National Champion Ohio State University Football team in the 2002-2003 season, defeating the University of Miami. He leveraged that goodwill into a real estate company in Central Ohio.

is co-owned by defendants Robert Hoying and Brent Crawford.[5] There are no other Nobel

Park Properties LLC shareholders. All LLC members and owners are domiciled in Ohio.

The agent for this LLC listed with the Ohio Secretary of State is also domiciled in Ohio.

## JURISDICTION and VENUE

18.     This Court has federal jurisdiction due to diversity of citizenship pursuant to 28

U.S.C. §1332(a)(1). The matter in controversy exceeds $75,000, exclusive of interest and

costs, and is between citizens of different states.

19.     Venue is proper in this Court pursuant to Title 18 U.S.C. §§ 1391(b)(1) and (b)(2).

A substantial part of the events or omissions giving rise to the claims in this action occurred

in the Southern District of Florida.

20.     Specifically, after the initial hotel assault occurred to Plaintiff in Ohio during 2022,

significant events have occurred since then while Plaintiff has returned to Florida, which is

a time from 2023 to current day. A written contract for settlement was offered by Defendants

to Plaintiff while he was living back in Florida (see below), and new acts of defamation

occurred in Florida (see the Cincinnati Insurance Company details below).

21.     "[i]n most instances, the purpose of statutorily specified venue is to protect the

*defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial."

*Leroy v. Great Western United Corp.,* 443 U.S. 173, 183-184, 99 S.Ct. 2710, 61 L.Ed.2d

464 (1979).

22.     In this instant case, there will be no travel to Florida required by Defendants prior to

a trial. Also, discovery depositions will be conducted in Ohio, per rules.

23.     Defendants bear a heavy burden in challenging this venue. "We have noted in

---

[5] That information is provided in the letter below from Hilton Domestic Operating Company Inc. to Robert
Hoying and Noble Park Properties, LLC.

contexts unrelated to forum-selection clauses that a defendant "invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Co.,* 549 U.S. 422, 430, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007). That is because of the "hars[h] result" of that doctrine: Unlike a § 1404(a) motion, a successful motion under *forum non conveniens* requires dismissal of the case. *Norwood,* 349 U.S., at 32, 75 S.Ct. 544. That inconveniences plaintiffs in several respects and even "makes it possible for [plaintiffs] to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate." *Id.,* at 31, 75 S.Ct. 544 (internal quotation marks omitted)." *Atlantic Marine Const. v. US Dist. Court,* 571 U.S. 49, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013).

24.     The 11th Cir. weighed in, "Under the federal standard, "dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249, 102 S.Ct. 252, 262, 70 L.Ed.2d 419 (1981)." *Sibaja v. Dow Chemical Co.,* 757 F. 2d 1215 - Court of Appeals, 11th Circuit 1985.

25.     In this instant case, the Complaint is not vexatious, by definition, because Defendants have already offered a settlement agreement after Plaintiff made extraordinary effort to mitigate damages, and the large corporate Defendants will not be unduly burdened. Lastly, Plaintiff cannot feasibly travel to Ohio for a trial given the cost and time away from work (i.e. "specific reasons of convenience").

26.     A trial will not be granted easily in this or any other federal court. Extensive briefing on motions to dismiss and summary judgment will ensue. Should this case pass those hurdles, then Defendants will not be unfairly burdened by a trial in Florida.

# **RESPONDEAT SUPERIOR**

27.     Defendants employ a hotel managing company called Shaner Group. Defendants,

individually and jointly act as the "principal" employer of Shaner Hotel Group, LP, which

is the "agent".

28.     Shaner and their staff, as the agents, committed some of the torts in the claims of this

Complaint. These were actions well within the scope of the agent's employment, (i.e., to

manage hotels).

29.     Shaner the agent was managing the hotel in a way that benefitted the principal (i.e.,

by collecting money from customers). The actions that harmed Plaintiff (i.e., illegal eviction,

defamation, invasion of privacy, etc.) were performed to benefit the principle (i.e., actions

meant to evade landlord-tenant law and streamline operations legally, *inter alia*).

30.     Shaner's actions were likely explicitly approved by the principle and were certainly

implicitly approved. A jury will decide that.

31.     Shaner is not an independent contractor per the balancing tests of the restatement of

the law treatise.[6] A jury will decide that if it is challenged by Defendants. Also, whether or

not *respondeat superior* applies in this instant case is a matter for a jury to decide as well.

32.     The above facts are summarized by The Supreme Court of Ohio. In *Davis v. The*

*May Dept. Stores, Co.*, 2001-Ohio-1362, the Court ruled:

>              It is well-established that in order for an employer to be
> liable under the doctrine of respondeat superior, the tort of
> the employee must be committed within the scope of
> employment. Moreover, where the tort is intentional, ***
> the behavior giving rise to the tort must be "calculated to
> facilitate or promote the business for which the servant
> was employed ***."*Byrd v. Faber* (1991), 57 Ohio St.3d
> 56, 58. Significantly, "[t]he willful and malicious
> character of an employee's act does not always, as a
> matter of law, remove the act from the scope of

---

[6] https://www.law.cornell.edu/wex/respondeat_superior

employment." *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 330. "'When an employee diverts from the straight and narrow performance of his task, the diversion is not an abandonment of his responsibility and service to his employer unless his act is so divergent that its very character severs the relationship of employer and employee. ***'" (Alterations original.) *Id.*, quoting *Stranahan Bros. Catering Co. v. Coit* (1896), 55 Ohio St. 398, 410. Furthermore, the determination of "whether an employee is acting within the scope of his employment is [generally] a question of fact to be decided by the jury." *Osborne*, 63 Ohio St.3d at 330. It only becomes a question of law when reasonable minds can come to but one conclusion. *Id.*

# FACTUAL ALLEGATIONS

33.  In February of 2022, Plaintiff was forced to relocate to Ohio in order to help his elderly father with dementia. An emergency situation had developed. His father had been abruptly abandoned alone at his Delaware, Ohio house with no caregiver.

34.  On February 7, 2022, looking for a hotel, Plaintiff used the Hilton website to find the Dublin, Ohio property doing business as "Home2 Suites by Hilton" and book a reservation.

35.  Plaintiff is a frequent customer of Hilton. He had stayed at a Home2 Suites in Texas the month before. On the drive from Texas to Ohio, he stayed at a Hilton in Memphis, etc. He had 573,000 Hilton-points at the time.



36.     On February 16th, 2022, Plaintiff checked into the Shaner-managed property in Dublin, Ohio doing business as "Home2 Suites by Hilton" (a defendant).

37.     He thought it was a purely-owned and operated Hilton hotel, but it was not. It is a Crawford-Hoying property operated as a joint venture with Hilton. They are the principles. Shaner is the agent used to provide the human staff for operations.

38.     However, upon checking in, there were no signs that stated the property was owned and operated by anyone other than Hilton. The signage and paperwork all indicated that it was a Hilton hotel.

39.     Plaintiff gave the desk staff his credit card, agreed to the terms of the contract, and paid in advance for one week an amount of $1,064.62, thus executing the contract with all Defendants.

40.     Of note, Plaintiff was never informed upon checking in that Ohio law limits "transient" hotel stays to 270-days. If guests stay longer than that, then the "transient hotel"

could be reclassified as an apartment complex, affecting city and county zoning laws, etc.

> **"Ohio Rev. Code Section 3731.04** | Types of accommodations offered by hotels- …
>
> A transient hotel also may allow a guest to stay in a transient sleeping room for a continuous period of two hundred seventy days or less if the transient hotel satisfies the requirements specified in section 3731.041 of the Revised Code."

41.     Plaintiff was never informed that the amount of time he could stay at this hotel was limited.

42.     When Plaintiff's hotel stay lasted longer than 30-days, he became a tenant just like an apartment dweller and enjoyed the protection of laws against frivolous harassment from a landlord or unjust eviction.

43.     The General Manager of this Shaner property at the time was a man named Chaz Le ("Chaz"). Plaintiff was on good terms with Chaz during his entire stay.

44.     The only notable problem with Plaintiff's stay was a fairly routine complaint about the housekeeping staff being reluctant to completely change the sheets, make the bed, etc., which were required once a week. The neglect of Plaintiff's room exceeded the standard post-COVID hotel industry policy to merely stop daily housekeeping. Even during the once-weekly visits, the Home2 Suites Shaner staff were trying to avoid changing the bed linen, towels, etc.

45.     Plaintiff also noticed other signs of poor management. For examples, the ground-floor gym had a large array of dumbbells stolen because of the lax security. Also, the carpet in the hallway of the lobby was stained because the staff did not place mats on the floor to collect the water that dripped from wet guests exiting the indoor swimming pool (chemicals in the pool caused stains).

46.     In addition, a front desk employee engaged with Plaintiff in odd and inappropriate conversations, often telling him her personal stories.

47.     Plaintiff stayed in the hotel from February through August (seven-months) without any incident to his knowledge. No one from the hotel had ever spoken to Plaintiff about any sort of alleged misconduct.

48.     If a real "altercation" worthy of eviction had taken place, it would have been the fiduciary responsibility of the General Manager, Chaz, to notify Plaintiff immediately.

49.     Then, unbeknownst to Plaintiff, Shaner made changes to the management of the Home2 Suites in September of 2022. They fired Chaz and replaced him with a roving regional manager named Morris Simon ("Simon").

50.     Simon held meetings with his staff and took inventory of the long-term-stay guests. Plaintiff had been staying in the hotel for approximately 210-days. Therefore, the 270-day limit for guests, per Ohio law, was approaching. Plaintiff was unaware of this.

51.     Plaintiff believes that the manager of housekeeping defamed him to this new management staff. It was in retaliation for his previous complaints.

**The Negligent and Illegal Entry of Plaintiff's Room and Invasion of Privacy**

52.     On September 12th, 2022, before Plaintiff was aware that Mr. Simon was the new manager and Chaz had been fired, he received a knock on his hotel room door around 10:00 AM by a man claiming to be housekeeping. It was Mr. Simon, the new acting manager, who was defrauding Plaintiff by lying about his job title. In fact, he was not "housekeeping" at all.

53.     Plaintiff, who was still in bed and disrobed, said through the closed door of the hotel room that he did not wish to have housekeeping do service at that time. But the man persisted on knocking.

54.    By this time, Plaintiff suspected a criminal intrusion was about to happen and began

filming the door from his bed. The conversation went as follows:

> Simon: Door knocks- "This is housekeeping."
>
> Greer from inside the room: "No thank you. Come back please."
>
> Door opens with Simon and hotel employee woman standing next to him staring at Greer lying in bed. Lights are out in the room. Curtains are shut.
>
> Greer: "What's going on here?"
>
> Simon: "I am the regional manager...they called me...the hotel called me...the management...we are going to have to ask you to leave..."
>
> Greer: "For what reason?"
>
> Simon: "There has been some altercation that was being aware to and I want to do this the right wat Mr. Gry [sic]"
>
> Greer: "I'm in the bedroom. There was no altercation. I have no idea what is going on."
>
> Simon: "A couple of times in the past few weeks..."
>
> Greer: "Let me get some clothes on. I'll come down and talk to you."
>
> Simon: "OK. I'll be here another 30-minutes."

(door closes)



55.    Plaintiff was greatly alarmed and suffered mental anguish, embarrassment, and humiliation from this illegal break-in and trespassing into his <u>apartment</u>.

56.    Plaintiff asked if they could continue the bizarre encounter over the phone rather than in person. Mr. Simon agreed, went downstairs, and Plaintiff called the front desk. He spoke to Simon.

57.    This incident was an act of illegal entry by a landlord.[7] Hotels in Ohio are not exempt from landlord-tenant law[8,9,10] in general, and this "hotel" in particular is an "extended" stay property with suites that have kitchens, etc. They are normal apartments with no contracts

---

[7] "Ohio R.C. Section 5321.04 | Landlord obligations.(A)(8)" "Except in the case of emergency or if it is impracticable to do so, give the tenant reasonable notice of the landlord's intent to enter and enter only at reasonable times. Twenty-four hours is presumed to be a reasonable notice in the absence of evidence to the contrary."
[8] "Ohio R.C. Section 3731.01 | Hotel definitions" does not carve out hotels as being exempt from Ohio R.C. 5321.
[9] It is also common law in Ohio that a hotel guest staying longer than 30-days is considered to be a permanent tenant and not a "transient" one.
[10] Plaintiff is not using these landlord-tenant laws as causes of action. These Ohio laws are noted to clarify that Defendants did not have the right to evict plaintiff, without any prior notice, and without resorting to the courts. Therefore, their actions were negligent.

or clauses that tell the guests they are <u>not</u> protected by Ohio landlord-tenant law.

58.     Defendants should be well aware of these laws. Therefore, it was an act of negligence for them to illegally enter Plaintiff's room and invade his privacy without a 24-hour notice and no pretext of an emergency.

**<u>The Initial Defamation</u>**

59.     Plaintiff called the front desk within minutes of the hotel room invasion and spoke to Simon. Plaintiff was speaking normally during this call, but Simon kept accusing him of yelling and being aggressive. Plaintiff believes he was spinning a tale for others in the office to hear so as to justify his attempt to evict Plaintiff. His actions were malicious and knowingly false.

60.     Mr. Simon said that there had been "multiple altercations in the past few weeks". Third-parties in the office heard this. Plaintiff had no idea what he was talking about. Simon later stated that there was just one "main incident", but refused to provide any details whatsoever.

61.     <u>Simon then admitted that he actually personally knew</u> nothing about the alleged "altercation" and was simply told by "management" that a "decision has been made" to evict Plaintiff.

62.     Third-parties in the office sitting by Simon heard these defamatory accusations that were published.

63.     Simon then demanded that Plaintiff leave within "24-hours", or "by tomorrow morning."

64.     Simon had no interest in hearing Plaintiff's side of the story (Notably, Plaintiff still does not know what alleged incident occurred despite numerus conversations with Defendants' lawyer, etc.).

65.     On the evening of September 12th, Plaintiff called the Dublin, Ohio Police and spoke to a supervisor. The Dublin Police Officer told him that Mr. Simon had already called them trying to use police to evict Plaintiff and the police refused. <u>Therefore, Plaintiff was portrayed by Simon to the police as a criminal,</u> which is *per se* defamation.

## Negligent Handling of the Incident

66.     The Dublin Police officer volunteered to Plaintiff an interesting fact. He said that their department had received frequent complaints from guests about the hotel management. Therefore, Defendants were negligent for not addressing what appears to be a recurring problem.[11]

67.     Plaintiff researched the ownership of the property and learned of the Shaner Group, which is a hotel management company employed by the Hoying Dependents.

68.     On September 13th, 2024, he called Lisa Larson ("Larson"), who is listed as the "Global Hotel Operations Officer" for Shaner. Larson mentioned rather out of the blue that Ohio law limits the length of stay of guests to 270-days. Plaintiff believes that this slip of the tongue explains one motivation for Shaner Group's actions.

69.     Plaintiff explained the details above. Larson was supposed to research the matter and call back. She never did. That was yet another act of negligence by Defendants.

70.     Larson never approved the continued stay of Plaintiff or reversed the actions of Simon. As far as Plaintiff knew, the hotel was still trying to evict him.

71.     Then, on September 18th, 2022, the hotel told Plaintiff that they needed to move him to a new room. The act seemed duplicitous and nefarious like a trap.

72.     Out of fear and under duress, Plaintiff moved out of the Hoying property. He relocated into a nearby hotel on September 18th.

---

[11] During discovery, Plaintiff plans to subpoena the Dublin Police.

73.     On September 23rd, 2023, having not heard back from Larson, Plaintiff called her again. He was surprised to learn that Larson thought that the problem was resolved simply because Plaintiff had moved out on his own without being legally evicted.

74.     Plaintiff requested a refund for the amount he had paid to Defendants. He received no reply.  Again, Defendants' lack of communication was negligence and a violation of her fiduciary duty as a "global" manager.

### This Was Part of a Post-COVID Hotel Industry Scam

75.     Plaintiff researched his incident to see whether others had experienced similar violations. What he learned is that the hotel industry schemed of ways[12] to handle the burgeoning population of extended-stay Americans who were driven out of their homes due to the COVID lockdowns and high unemployment.

76.     The business model of offering "extended-stay" rooms normally meets a demand of business travelers who are unlikely to default on their contract. However, the people driven into these situations after the 2020 lockdowns were at high risk of being unable to pay the rent.

77.     The problem for Defendants is that their entire business model is dubious. They are trying to offer extended-stay "hotels", but are actually operating apartments with "tenants" who enjoy the protections of landlord-tenant laws.

78.     Therefore, rather than resort to courts for proper evictions and expose the unlawfulness of their "hotels", Defendants use the tactics of abruptly surprising guests with demands for immediate evictions based on fabricated allegations. When that "shock and

---

[12] Here, a commercial real estate company, Costar, offers an instructional website: "How Hoteliers Can Avoid Turning Long-Term Guests Into Tenants- Pandemic Led to More Potential Hotel Landlord-Tenant Relationships"
https://www.costar.com/article/1115067271/how-hoteliers-can-avoid-turning-long-term-guests-into-tenants

awe" strategy fails, the managers then turn to local police for help. When that does not work, they try to relocate the tenant into a new room to reclassify them as a transient guest that no longer affords the protections of a long-term guest.

79.     Defendants tried all of those steps in this instant case. If discovery in this case proves that Defendants have indeed intentionally engaged in these conspiracies, then class-action civil and criminal RICO cases could be initiated.

80.     This Complaint is not a class action. However, Plaintiff is not alone. Numerous other examples of similar incidents can be found. For example, an X.com account named @BrokenTruthTV tweeted how he was staying at another Home2 Suites by Hilton in Amarillo, Texas when management broke into a room. He had no clothes on and was forced to draw his firearm thinking he was being robbed. Plaintiff called the hotel and learned that numerous guests had experienced the same thing. Because the Hilton computer reservation system had crashed, management thought it was acceptable to open hotel rooms without permission.[13]



> **Broken Truth** ✔
> @BrokenTruthTV
>
> Hotel system glitched and crashed in Amarillo. Our room (last available) was somehow locked from the inside. The staff opened the door and there was an armed naked dude in it! The system registered the room as empty!
>
> 1:08 AM · 7/9/24 From Earth · **1.4K** Views

---

[13] Plaintiff plans to subpoena records about this series of incidents.

## The Most Recent Defamation and Fraud

81.     In April of 2024, Plaintiff drafted a Complaint and contacted various lawyers or officers of Defendants. Settlement negotiations ensued.

82.     On June 6, 2024, Plaintiff received a call from an unknown woman who was reluctant to give details of the nature of her call. Her name was Sarina Denman and works for The Cincinnati Insurance Company. However, she was very suspicious and dodgy. She refused to state which defendant initiated her investigation.

83.     An email after the call from Denman stated,

> "As previously stated Hilton and Shaner are Additional Insureds. I am reaching out on behalf of Bridge Park Hotel LLC, not on behalf of Hilton. We are still investigating this matter."

84.     <u>In no way did Plaintiff initiate an insurance claim</u>. He simply answered a phone call from Ms. Denman.

85.     On June 17, 2024, Denman emailed Plaintiff a letter in the form a claims denial. The letter stated:

> "...We have attempted to appraise fairly and properly all of the information available to us regarding the damages. Being guided by these facts, it is our conclusion that there is no evidence that our insured was negligent or legally responsible for your claimed damages. <u>As such, we must respectfully deny your claim</u>. This declination is based upon information presently available to us. Should you have additional information that you feel may affect the liability position of The Cincinnati Insurance Company, please forward it to the undersigned for further review..." (emphasis added)

86.     Plaintiff immediately became alarmed after reading the fraudulent letter. It was clearly trying to misrepresent the facts as if Plaintiff were a claimant. He sent a cease-and-desist email to Denman to correct the lies, but the letter and was ignored.

87.     On June 20, 2024, Plaintiff spoke to a lawyer representing Hoying, Mr. Marc Kessler

of Taft Law, and he denied that his client initiated a claim with Denman's company. The lawyer representing Shaner also denied any involvement. Plaintiff believes that Mr. Kessler was lying.

88.     Clearly, Defendants were involved in this incident and are now falsely denying it and knowingly misleading Plaintiff. That is "unfair and deceptive" per the R.C. §1345.02 Consumer Sales Practices Act.

89.     The Cincinnati Insurance Company's letter is also *prima facie* proof of defamation committed by Defendants. Whatever Defendants said or published to Ms. Denman (a third party) led The Cincinnati Insurance Company to view Plaintiff as a liar and discredited man.

## **EFFORTS by PLAINTIFF to AVOID LITIGATION**

90.     Plaintiff has attempted to resolve this matter for two years. He was ignored by layers upon layers of agents hired by Defendants. In-house lawyers for the Hilton corporation replied by showing Plaintiff a copy of a letter they had sent to Robert Hoying, ordering him personally to resolved the matter (see image below).

91.     However, Robert Hoying continued to ignore the problem. When Plaintiff searched court records and found attorneys on other cases related to Defendants, he was eventually referred to a lawyer at Taft Law named Marc Kessler.

92.     Mr. Kessler failed to address the grievances in good faith. It was clear he had put no effort into researching the facts or reading a draft Complaint. Eventually, Mr. Kessler made a written offer that was designed to be insulting.

**Hilton**

Jennifer Guy
Senior Counsel, Dispute Resolution
703 883 3032
Jennifer.Guy@Hilton.com

Hilton Domestic Operating Company Inc.
7930 Jones Branch Drive
McLean, VA 22102
USA

April 16, 2024

**VIA EMAIL ONLY (bhoying@crawfordhoying.com)**

Noble Park Properties, LLC
Attn: Robert C. Hoying
555 Metro Place North, Suite 600
Dublin, OH 43017

Re:  Case Name:  Steven Greer Claim
     Location:   Home2 – Columbus Dublin, OH (ID No. 48318)

Dear Mr. Hoying:

Please find attached a notice of claim letter regarding the matter referenced above, which was recently received by Hilton Domestic Operating Company Inc. ("Hilton") in connection with the franchised property that you own or operate. Pursuant to the terms of the Franchise Agreement relating to your ownership or operation of the subject property, I am tendering this claim to you for resolution. _Please take all steps necessary to resolve and otherwise protect Hilton's interests in this matter._

Should you have any questions, please do not hesitate to contact me. Thank you for your prompt attention to this matter.

Regards,

_Jennifer Guy_

Jennifer Guy

JG/lb

cc:   Chad Eckard, General Manager (via email)

## NOBLE PARK PROPERTIES, LLC is an ALTER EGO

93.     Noble Park Properties, LLC was established as an Ohio LLC in 2015, per the Ohio SoS online database of companies. In 2019, Noble Park changed its name to Dublin Home 2 Investments, LLC for unknown reasons. Defendant and co-owner Brent Crawford signed the change-of-name form that is filed with the Ohio SoS. He is listed as the "Authorized Representative". However, there are no corporation filing documents under the name of Dublin Home 2 Investments, LLC. The LLC entity remains under the original articles of organization for Noble Park.[14] Therefore, Dublin Home 2 Investments, LLC is to be viewed as a "doing business as" name and not a separate entity or defendant.

---

[14] That is why Dublin Home 2 Investments, LCC was removed as a defendant in this Amended Complaint.

94.     In 2015, Noble Park was the business entity that became the grantee (i.e., owner) of the deed for the hotel property where some of the actions core to this Amended Complaint occurred (i.e., the Home2 Suites by Hilton located at 5000 Upper Metro Place, Dublin, Ohio, 43017). There is no evidence that Noble Park is an actual real estate management company. The hotel is managed by Shaner Group; a company hired by individuals Hoying and Crawford.

95.     The original listed company agent in the 2015 Noble Park Properties, LLC SoS filings is John A. Gleason, who was an Ohio lawyer at the time with an address listed on the LLC documents as 141 South High Street, Suites 2800-3200 and a phone number that goes straight to voicemail at (614) 296-1281. Phone messages left are not returned.

96.     Now, The Columbus Bar Associations lists him as having only a P.O. Box linked to a solo practice at Gleason Law Office LLC, PO Box 768, New Albany, OH 43054-0768 (i.e., a different city than Columbus and the South High Street address). His email is listed as jgleason@gleasonlawofficellc.com. An email on August 16, 2024 from Gleason to Plaintiff lists his address as Gleason Law Office LLC, 4200 Regent Street, Suite 200, Columbus, Ohio 43219 (i.e., different from what is listed with the SoS). An Internet search of Mr. Gleason reveals nothing but lawyer spam ads[15], etc. Mr. Gleason has little presence on the Internet that is noteworthy, which is unusual for most practicing lawyers.

97.     According to new 2022 Ohio law governing LLC's[16], Mr. Gleason has not met the requirements of an agent to maintain a valid LLC. He has changed addresses numerous times since the 2015 SoS filing and has not updated the SoS. His phone number on file with the

---

[15] For example, https://www.lawyers.com/columbus/ohio/john-albert-gleason-esq-24659051-a/

[16] Ohio Revised Limited Liability Company Act (Ohio Rev. Code §§ 1706.01-1706.84)(E)- If the agent described in division (A) of this section changes the agent's address from the address stated in the records of the secretary of state, the agent or the limited liability company or foreign limited liability company shall file forthwith with the secretary of state, on a form prescribed by the secretary of state, a written statement setting forth the new address.

SoS is also nonfunctioning.

## The INDIVIDUAL DEFENDANTS are not IMMUNE

98.     The individual Defendants, Hoying and Crawford, do not enjoy immunity from the actions of their LLC corporate entity, Noble Park. First, that corporate veil has been pierced. Noble Park Properties, LLC is an alter ego to the individuals and organized to protect those individuals from the fraudulent business conducted by the hotel that it owns. Secondly, Ohio law governing LLC management specifically makes individual owners liable for monetary relief for a violation of their duties.

### Piercing the Corporate Veil

99.     In the case of *North American Clearing v. Brokerage Computer Sys.*, 666 F. Supp. 2d 1299 (M.D. Fla. 2009), "Piercing the corporate veil in Florida traditionally requires <u>two elements</u>: first, "the corporation is in actuality the <u>alter ego</u> of the stockholders," and second, "it was organized or after organization was employed by the stockholders <u>for fraudulent or misleading</u> purposes." *Dania Jai-Alai Palace, Inc. v. Sykes,* 450 So.2d 1114, 1120 (Fla.1984)."

100.    Noble Park is a shell company created as an "alter ego" sham for Hoying and Crawford. There is no sign of it being a real business. Noble Park has no website or way to contact it other than an obscure "agent" listed with the Ohio Secretary of State ("SoS").

101.    That agent, John A. Gleason, does not respond to phone calls. As detailed above, his address listed on the SoS database[17] is outdated and does not match his current address[18]. Mr. Gleason appears to be a solo practice lawyer catering to real estate clients who need to create shell companies as legal shams.

---

[17] 141 South High Street, Suites 2800-3200, Columbus, Ohio 43215
[18] An August 16, 2024 email from Gleason to Plaintiff listed his address as 4200 Regent Street, Suite 200 Columbus, Ohio  43219

102.   Plaintiff was eventually able to get a response from Mr. Gleason via email on August 16th. Plaintiff requested the operating agreement papers that detail shareholders in Noble Park Properties, LLC. Gleason refused to comply before the time of this filing.

103.   <u>Noble Park is the definition of an alter ego</u>. There is no difference between the owners and the actions of the shell company. The LLC obfuscates their ownership from the public eye and the numerous disgruntled customers of the Home2 Suites hotel that it owns. That <u>misleads</u> the public.

104.   Noble Park's "Home2 Suites by Hilton" hotel conducts business with fraud as its *modus operandi*. As detailed above, it is actually an apartment complex that avoids landlord-tenant laws by masquerading as a hotel. That is fraud. Noble Park was "organized by the stockholders for fraudulent or misleading purposes."

## Hoying and Crawford are Liable Per Ohio Law

105.   According to Ohio Revised Limited Liability Company Act (Ohio Rev. Code § 1706.311(E)- Duties of a manager to a limited liability company and its members.): "A manager <u>shall be liable for monetary relief for a violation of the manager's duties</u> under division (C) of this section only if it is proved that the manager's action or failure to act involved an act or omission undertaken with <u>deliberate intent</u> to cause injury to the limited liability company or <u>undertaken with reckless disregard for the best interests of the company</u>."

106.   The allegations of this Amended Complaint, which are to be taken as true at this stage of the pleadings, paint a picture of two individual defendants and LLC managers, Hoying and Crawford, creating a sham shell company LLC as an alter ego to provide a buffer from the fraudulent business practices of the hotel owned by Noble Park Properties, LLC. Those are <u>deliberate, intentional acts not in the best interest of the LLC</u>.

107.    Furthermore, Plaintiff has been in extensive communication with Hoying, Crawford, their agent (Shaner), their lawyer (Mr. Kessler), and their joint venture partner (Hilton). The underlying facts of the grievance (the invasion of privacy, failure to obey Ohio landlord-tenant laws, etc.) have never been disputed by Defendants, and yet Defendants have refused to mitigate damages by failing to negotiate with Plaintiff in good faith. If Noble Park were a publicly traded company, shareholders would have a strong case against Hoying and Crawford for violating their fiduciary duties. For those reasons too, Hoying and Crawford have <u>deliberately</u> acted with <u>reckless disregard</u> for the best interests of the company, thereby violating Ohio LLC law.

## **ABOUT the EVIDENCE**

108.    At no point have any of the facts alleged in this Amended Complaint been disputed by Defendants or their lawyers. If Defendants were to commit perjury to this Court and dispute these facts, Plaintiff has ample evidence that can be produced.


## **COUNT 1: NEGLIGENCE**

109.    Plaintiff realleges as though fully set forth at length, and incorporates herein by reference, all of the allegations in ¶¶ 1-108 and statements made above and contained herein.

110.    Defendant Noble Park Properties, LLC is a shell company and alter ego of the individual defendants, Hoying and Crawford, who act in unison as co-owners and co-managers. Therefore, allegations in this Count apply to all Defendants.

111.    <u>The elements of a negligence</u> claim under Florida law[19] are: (1) a legal duty on the defendant to protect the plaintiff from particular injuries; (2) the defendant's breach of that duty; (3) the plaintiff's injury being actually and proximately caused by the breach; and (4)

---

[19] Should this Court choose to use Ohio law, the elements are the same.

the plaintiff suffering actual harm from the injury. *Clay Elec. Coop., Inc. v. Johnson*, 873 So.2d 1182, 1185 (Fla.2003). These elements have been met (see underlined sections below).

112.   The statute of limitations for the tort of negligence is two-years. This Complaint has been filed in less time.

113.   Defendants (Robert Hoying, Brent Crawford, and Noble Park Properties, LLC), acting as the "principle" employers, individually, and by and through its agents and/or joint venturers (Hilton Domestic Operating Company Inc. is the joint venture and Shaner Hotel Group LP is the agent), had a duty to exercise reasonable and ordinary care, and caution in and about the ownership, management, maintenance, supervision, control and operation of the Dublin, Ohio "Home2 Suites" and its reservation system and each of its employees, agents, servants and independent contractors, all to the benefit of guests, patrons, business invitees, and persons like Plaintiff.

114.   Defendants, by and through their agents, employees, servants, and/or independent contractors, breached that duty and were negligent in their acts and/or omissions by, *inter alia*, allowing incompetent managers to run the business operations, resulting in a breaking and entering of Plaintiff's long-term stay apartment room while he was in bed and undressed, while a female employee stood and witnessed the actions, and also engage in defamatory attacks against Plaintiff (see ¶¶ 52-58).

115.   When Plaintiff tried to mitigate damages by calling a senior manager, Larson, she negligently failed to return calls or take any other actions (see ¶¶ 68-74).

116.   According to Mr. Simon, it was Larson who ordered him to remove Plaintiff from his room, yet Larson never visited the property, or even the State of Ohio, and never interviewed Plaintiff. Her decision was made with negligence.

117.    Shaner was negligently ignoring landlord-tenant laws of Ohio by trying to harass Plaintiff into leaving rather than use the recourse of the courts.

118.    Defendants, the principles, are liable for the actions of Shaner, *et al* (the agents).

119.    <u>As a direct and proximate cause of the breach of duty</u> by the above-said conduct of Defendants, <u>Plaintiff has suffered and continues to suffer actual harm</u> from, including but not limited to, severe and permanent emotional distress, embarrassment, and a loss of earning capacity.

120.    WHEREFORE, Plaintiff Steven Greer prays for judgment in his favor and against all Defendants in an amount in excess of $2,000,000 (Two Million Dollars)[20], plus costs and interest, and any other costs this Court deems is fair.

# COUNT 2: NEGLIGENT INFLICTION of EMOTIONAL DISTRESS

121.    Plaintiff realleges as though fully set forth at length, and incorporates herein by reference, all of the allegations in ¶¶ 1-108 and statements made above and contained herein. Specific allegations are listed by paragraph below to comply with the Order.

122.    Defendant Noble Park Properties, LLC is a shell company and alter ego of the individual defendants, Hoying and Crawford, who act in unison as co-owners and co-managers. Therefore, allegations in this Count apply to all Defendants.

123.    To successfully plead negligent infliction of emotional distress, the underlying tort of negligence must be pled <u>as a separate</u> cause of action. Plaintiff did so in Count 1. In addition, allegations of negligence are made in Count 2 here.

124.    Defendants (Robert Hoying, Brent Crawford, and Noble Park Properties, LLC),

---

[20] A dollar amount found to be reasonable in a similar case of *Andrews v. Marriott*, Case No. 11c4831 Circuit Court for Davidson County, Tennessee, 2011

acting as the "principle" employers, individually, and by and through its agents and/or joint venturers (Hilton Domestic Operating Company Inc. is the joint venture and Shaner Hotel Group LP is the agent), had a duty to exercise reasonable and ordinary care, and caution in and about the ownership, management, maintenance, supervision, control and operation of the Dublin, Ohio "Home2 Suites" and its reservation system and each of its employees, agents, servants and independent contractors, all to the benefit of guests, patrons, business invitees, and persons like Plaintiff.

125.    Defendants, by and through their agents, employees, servants, and/or independent contractors, breached that duty and were negligent in their acts and/or omissions by, *inter alia*, allowing incompetent managers to run the business operations, resulting in a breaking and entering of Plaintiff's long-term stay apartment room while he was in bed and undressed, while a female employee stood and witnessed the actions, and also engage in defamatory attacks against Plaintiff (see ¶¶ 52-58).

126.    When Plaintiff tried to mitigate damages by calling a senior manager, Larson, she negligently failed to return calls or take any other actions (see ¶¶ 68-74).

127.    According to Mr. Simon, it was Larson who ordered him to remove Plaintiff from his room, yet Larson never visited the property, or even the State of Ohio, and never interviewed Plaintiff. Her decision was made with negligence.

128.    Shaner was negligently ignoring landlord-tenant laws of Ohio by trying to harass Plaintiff into leaving rather than use the recourse of the courts.

129.    Defendants, the principles, are liable for the actions of Shaner, *et al* (the agents).

130.    As a direct and proximate cause of the breach of duty by the above-said conduct of Defendants, Plaintiff has suffered and continues to suffer actual harm from, including but not limited to, severe and permanent emotional distress, embarrassment, and a loss of

earning capacity.

131.   "Because Appellants pled negligence sufficiently, we conclude that they likewise stated a valid claim for negligent infliction of emotional distress. Such a claim requires "mental or 1338*1338 emotional harm (such as fright or anxiety) that is caused by the negligence of another and that is not directly brought about by a physical injury, but that may manifest itself in physical symptoms." *Consol. Rail Corp. v. Gottshall,* 512 U.S. 532, 544, 114 S.Ct. 2396, 2405, 129 L.Ed.2d 427 (1994)" Chaparro v. Carnival Corp., 693 F. 3d 1333 - Court of Appeals, 11th Circuit 2012.

132.   Defendants (Robert Hoying, Brent Crawford, and Noble Park Properties, LLC), acting as the "principle" employers, individually, and by and through its agents and/or joint venturers (Hilton Domestic Operating Company Inc. is the joint venture and Shaner Hotel Group LP is the agent), had a duty to exercise reasonable and ordinary care, and caution in and about the ownership, management, maintenance, supervision, control and operation of the Dublin, Ohio "Home2 Suites" and its reservation system and each of its employees, agents, servants and independent contractors, all to the benefit of guests, patrons, business invitees, and persons like Plaintiff.

133.   All Defendants, by and through their agents, employees, servants, and/or independent contractors, breached that duty and were negligent in their acts and/or omissions by, amongst other things, allowing incompetent managers to run the business operations, resulting in a breaking and entering of Plaintiff's long-term stay apartment room while he was in bed and undressed, while a female employee stood and witnessed the actions, and also engage in defamatory attacks against Plaintiff (see ¶¶ 52-58).

134.   When Plaintiff tried to mitigate damages by calling senior manager Larson, she negligently failed to return calls or take any other actions (see ¶¶ 68-74).

135.    According to Mr. Simon, it was Larson who ordered him to remove Plaintiff from his room, yet Larson never visited the property, or even the State of Ohio, and never interviewed Plaintiff. Her decision was made with negligence.

136.    Defendants' agents were negligently ignoring landlord-tenant laws of Ohio by trying to harass Plaintiff into leaving rather than use the recourse of the courts (see ¶¶ 40, 104, 178).

137.    Defendants, the principles, are liable for the actions of Shaner, *et al*, the agents (see ¶¶ 27-32).

138.    As a direct and proximate cause of the breach of duty by the above-said conduct of Defendants, Plaintiff has suffered and continues to suffer actual harm from, including but not limited to, severe and permanent emotional distress, embarrassment, and a loss of earning capacity.

139.    Therefore, all Defendants, by and through their agents, employees, servants, and/or independent contractors, were negligent in their acts and/or omissions by allowing incompetent managers (see ¶¶ 43-51, *inter alia*) to run the business operations resulting in a breaking and entering of Plaintiff's hotel room while he was in bed and undressed, and while a female employee stood and witnessed the actions.

140.    As a direct and proximate result of the negligent acts and/or omissions of all Defendants, Plaintiff has suffered and continues to suffer from, including but not limited to, severe and permanent emotional distress, embarrassment, and a loss of earning capacity.

141.    WHEREFORE, Plaintiff prays for judgment in his favor and against all Defendants in an amount in excess of $2,000,000 (Two Million Dollars)[21], plus costs and interest, and any other costs this Court deems is fair.

---

[21] A dollar amount found to be reasonable in a similar case of *Andrews v. Marriott*, Case No. 11c4831 Circuit Court for Davidson County, Tennessee, 2011

# COUNT 3: INVASION of PRIVACY

142.    Plaintiff realleges as though fully set forth at length, and incorporates herein by reference, all of the allegations in ¶¶ 1-108 and statements made above and contained herein. Specific allegations are listed by paragraph below to comply with the Order.

143.    Defendant Noble Park Properties, LLC is a shell company and alter ego of the individual defendants, Hoying and Crawford, who act in unison as co-owners and co-managers. Therefore, allegations in this Count apply to all Defendants.

144.    The statute of limitations for invasion of privacy (an intentional tort) is four years. See Florida Statute, Title VIII, Chapter 95, Section 11 (2021).

145.    The 11th Cir. has relied upon the "Restatement of Torts" to define invasion of privacy.

> "Restatement of the Law, Second, Torts, § 652 Copyright (c) 1977, The American Law Institute §652 B Intrusion Upon Seclusion
>
> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.
>
> Comments:
> a. The form of invasion of privacy covered by this Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs. It consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man.
> b. The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or..."

146.    Therefore, this tort perfectly applies to the instant Complaint. Defendants "forced their way into Plaintiff's hotel room" just as the "Restatement" treatise above spells out.

147.    The 11th Cir. recognizes this "Restatement" as law. In *Phillips v. Smalley Maint. Servs., Inc.*, 711 F.2d 1524, 1533 (11th Cir. 1983), "Does the law of the State of Alabama

recognize the tort of invasion of privacy in the form described in § 642B, *Restatement (Second) of Torts* (1977) and set forth below?... *Restatement (Second) of Torts,* § 652B, and its Comment, enunciate a clear and concise definition, and establish the perimeter, of the "wrongful intrusion" tort, which, when read in light of our own case law, affords meaningful guidelines for the adjudication of such actions as alleged by the instant Plaintiff. Consequently, we answer the Court of Appeals' first inquiry in the affirmative."

148.    Defendants (Robert Hoying, Brent Crawford, and Noble Park Properties LLC), acting as the "principle" employers, individually, and by and through its agents and/or joint venturers (Hilton Domestic Operating Company Inc. is the joint venture and Shaner Hotel Group LP is the agent), had a duty to exercise reasonable and ordinary care, and caution in and about the ownership, management, maintenance, supervision, control and operation of the Dublin, Ohio "Home2 Suites" and its reservation system and each of its employees, agents, servants and independent contractors, all to the benefit of guests, patrons, business invitees, and persons like Plaintiff.

149.    Defendants, by and through their agents, employees, servants, and/or independent contractors, were negligent in their acts and/or omissions by allowing incompetent managers to run the business operations resulting in a breaking and entering of Plaintiff's hotel room while he was in bed and undressed, as a female employee stood and witnessed the actions (see ¶¶ 52-58).

150.    Defendants had no legal right to enter Plaintiff's room, which was an extended-stay apartment afforded legal rights of tenants in Ohio. There was no emergency reason to open Plaintiff's door either.

151.    The intrusions by Defendants were and are objectionable and offensive to any reasonable person, including Plaintiff.

152.    As set forth above, the intrusions by Defendants were specific to Plaintiff's private information and private matters (i.e., his private apartment dwelling).

153.    As a direct and proximate result of the intrusion of seclusion and invasion of privacy by Defendants, Plaintiff has suffered and continues to suffer from, including but not limited to, severe and permanent emotional distress, embarrassment, and a loss of earning capacity.

154.    WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants in an amount in excess of $2,000,000 (Two Million Dollars)[22], plus costs and interest, and any other costs this Court deems is fair.

## COUNT 4: DEFAMATION

155.    Plaintiff realleges as though fully set forth at length, and incorporates herein by reference, all of the allegations in ¶¶ 1-108 and statements made above and contained herein. Specific allegations are listed by paragraph below to comply with the Order.

156.    Defendant Noble Park Properties, LLC is a shell company and alter ego of the individual defendants, Hoying and Crawford, who act in unison as co-owners and co-managers. Therefore, allegations in this Count apply to all Defendants.

**The Statute of Limitations for Defamation**

157.    The statute of limitations for defamation is one year. The recent defamatory Statements (see ¶¶ 81-89) occurred in 2024, or under one year. The Statements made in 2022 (see ¶¶ 59-65) are tolled because they are part of a continuing pattern per the Continuing Violations Doctrine.

158.    In *Florida Transp. Service, Inc. v. Miami-Dade County*, 757 F. Supp. 2d 1260 (S.D. Fla. 2010), "Under this [continuing violation] doctrine, a claim filed outside the limitations

---

[22] A dollar amount found to be reasonable in a similar case of *Andrews v. Marriott*, Case No. 11c4831 Circuit Court for Davidson County, Tennessee, 2011

31

period is not untimely if the violation is caused by a continuing illegal policy. *See, e.g., Nat'l Parks & Conservation Ass'n v. Tenn. Valley Auth.,* 502 F.3d 1316, 1322 (11th Cir. 2007); *Bendik v. Credit Suisse First Boston (USA), Inc.,* 2004 WL 736852, *6 (S.D.N.Y. Apr. 5, 2004). The doctrine is based on the "equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated." *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1222 (11th Cir.2001)"

## **The Elements of Defamation**

159.    In *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330 (M.D. Fla. 2006), "The elements of defamation claim are: (1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) the falsity of the statement caused injury to plaintiff. *Bass v. Rivera,* 826 So.2d 534, 534 (Fla. 2d DCA 2002)."

160.    In this instant case, Defendants (Robert Hoying, Crawford Hoying Development Partners LLC, Bridge Park Hotel LLC, Home2 Suites by Hilton, Noble Park Properties LLC, and Dublin Home 2 Investments LLC), acting as the "principle" employer, individually, and by and through its agents and/or joint venturers (Hilton Domestic Operating Company Inc. is the joint venture and Shaner Hotel Group LP is the agent), willfully and maliciously, or with negligence, published to third-parties numerous false factual Statements (i.e., not opinion) concerning Plaintiff, and causing harm to Plaintiff's reputation as a medical doctor.

161.    These false Statements are detailed verbatim above (e.g., that Plaintiff was causing altercations at the hotel worthy of a criminal complaint to the Dublin Police, made a false claim to the Cincinnati Insurance Company, etc.). Numerous third-parties (e.g., the Dublin Police, the hourly workers of the hotel, The Cincinnati Insurance Company, etc.) believed the *per se* defamation and then acted accordingly against Plaintiff in hostile ways.

162.   Defendants published the false Statements <u>without privilege</u> of any kind. The comments made to the police and insurance company were knowingly false and malicious. Therefore, no privilege applies.

163.   In *Border Collie Rescue, Inc. v. Ryan*, "Voluntary statements made by private individuals to police in furtherance of an investigation are clothed in a qualified privilege. *Fridovich v. Fridovich,* 598 So.2d 65, 69 (Fla.1992). To overcome a qualified privilege, a plaintiff has to show by a preponderance of the evidence that the defamatory statements were false and uttered with common law express malice. *Id.* Express malice sufficient to overcome the presumption of good faith exists where the primary motive for the statement is shown to be an intention to injure. *Thomas v. Tampa Bay Downs, Inc.,* 761 So.2d 401, 404 (Fla. 2d DCA 2000)."

164.   This instant Complaint details how there was never an "altercation" by Plaintiff or any other justification for Defendants and their employees to burst into Plaintiff's hotel room.[23] The hotel chain has a pattern of doing this (see recent example in Amarillo, Texas (see ¶ 4).). The Dublin, Ohio Police stated that Defendants and this hotel have a pattern of making frivolous complaints (see ¶¶ 65-66). Therefore, <u>a "preponderance of the evidence"</u> <u>exists</u> for a jury to rule that Defendants have been stripped of their qualified immunity regarding defamatory comments made to police or insurance companies.

**The Elements of *Per Se* Defamation**

165.   The Statements constitute *per se* defamation. This Southern District of Florida has defined *per se* defamation.

166.   In *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240 (S.D. Fla. 2014), "*Per se* defamatory statements are "so obviously defamatory" and "damaging to [one's] reputation"

---

[23] Plaintiff has conducted extensive settlement negotiations with all parties and none of them have ever produced a shred of evidence of any sort of altercation.

that they "give[] rise to an absolute presumption both of malice and damage." In Florida, slander is actionable *per se* without a showing of special damage [] if it <u>imputes to another (a) a criminal offense amounting to a felony</u>, or (b) a presently existing venereal or other loathsome and communicable disease, or (c) <u>conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession</u>, or office, or (d) the other being a woman, acts of unchasti[t]y. *Campbell,* 66 So.2d at 497 (alterations added; citation omitted)."[24]

167.    In this instant case, Defendants defamatory statements accuse Plaintiff of, (a) one or more serious crimes, and (b) an unfitness to perform the duties of a profession, such as medicine and surgery.

**<u>Defendants Defamed Plaintiff with Malice</u>**

168.    Defendants acted with actual malice and reckless disregard of the truth for the following reasons:

> A)- **Defendants fabricated the Statements**. The events described by Defendants to law enforcement and hotel staff never occurred. The Statements were a product of Defendants' malicious imaginations, made up out of whole cloth in order to impute intentional wrongdoing to Plaintiff. Although Defendants made it appear as if they had direct knowledge of facts, they did not have one shred of evidence to support the Statements. See *St. Amant v. Thompson,* 390 U.S. 727, 732 (1968) ("The finder of fact must determine whether the publication was indeed made in good faith. Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, [or] is the product of his imagination").
>
> B)- **Defendants purposefully avoided the truth,** including that Plaintiff was on good terms with the prior manager Chaz and had never been warned that he was acting badly as a hotel guest. Also,

---

[24] Ohio law defines *per se* defamation as any statement that "reflects upon the character of [the plaintiff] by bringing him into ridicule, hatred, or contempt, or affects him injuriously in his trade or profession." *Becker v. Toulmin,* 138 N.E.2d 391, 395 (Ohio 1956).

Defendants knew that Plaintiff had nothing to do with the insurance claim being opened and avoided that truth.

C)- The Statements are so inherently improbable that **only a reckless person would have put the Statements in circulation.** See *Zuckerbrot v. Lande*, 2022 WL 816807, at * 16 (N.Y. Sup. 2022) (defendant levelled "inherently improbable" claim that "Zuckerbrot and her family dispatched 'people' to follow, intimidate, and potentially 'physically harm' her."); *US Dominion, Inc. v. Powell*, 554 F.Supp.3d 42, 63 (D. D.C. 2021) ("a reasonable juror could conclude that the existence of a vast international conspiracy that is ignored by the government but proven by a spreadsheet on an internet blog is so inherently improbable that only a reckless man would believe it.").

D)- **Defendants had a motive and pre-determined agenda**, their commitment to which led them to publish the statements about Plaintiff that they either knew to be false or that they published with reckless disregard as to whether the Statements were false. The sole purpose of the statements was to further Defendants' scheme to evict Plaintiff without having to resort to a court. <u>The 270-day law in Ohio was coming near and the new manager wanted to clean the slate from old guests.</u>

E)- **Defendants harbor hatred, extreme bias, spite, and ill-will towards Plaintiff.** This bias and prejudice motivated to publish the intentionally false Statements about Plaintiff. As evidenced by the words Defendants chose and the timing and tenor of the publications, Defendants intended to inflict harm through knowing or reckless falsehoods. *Don King Productions, Inc. v. Walt Disney Co.*, 40 So.3d 40, 45 (Fla. 4th DCA 2010) ("[a]n intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice unless the publisher intended to inflict harm through knowing or reckless falsehood.") (citing Garrison v. Louisiana, 379 U.S. 64, 73 (1964)).

169.   As a direct result of Defendants' *per se* defamatory Statements, Plaintiff suffered presumed damages.

170.   Plaintiff also suffered actual damages including but not limited to insult, pain, embarrassment, humiliation, mental suffering, injury to his reputation, costs and other out-of-pocket expenses.

171.     Plaintiff also asks this Court for punitive damages. In *Coton v. Televised Visual X-Ography, Inc.*, 740 F. Supp. 2d 1299 (M.D. Fla. 2010), "Fla. Stat. § 540.08(2) provides that a prevailing plaintiff may recover:...(2) punitive or exemplary damages."[25]

172.     As a direct and proximate result of Defendants' defamation, Plaintiff experienced physical and mental pain and suffering resulting in a diminished earning ability. Plaintiff also suffered great pain, suffering, mental anguish, and emotional distress.

173.     Defendants' defamatory actions in June of 2024 were part of a continuing pattern of violations that began in 2022.

174.     WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants in an amount in excess of $25,000,000 (Twenty Five Million U.S. Dollars) plus costs and interest, and any other costs this Court deems is fair.[26]

## COUNT 5: BREACH of CONTRACT

175.     Plaintiff realleges as though fully set forth at length, and incorporates herein by reference, all of the allegations in ¶¶ 1-108 and statements made above and contained herein. Specific allegations are listed by paragraph below to comply with the Order.

176.     Defendant Noble Park Properties, LLC is a shell company and alter ego of the individual defendants, Hoying and Crawford, who act in unison as co-owners and co-managers. Therefore, allegations in this Count apply to all Defendants.

### Which State Contract Law Should be Applied?

177.     There was no written contract between Plaintiff and Defendants that specified the prevailing law to be applied in case of a dispute. Therefore, this Court will apply its own choice of law rules.

---

[25] In Ohio, punitive damages "may be recovered only upon a showing of both common law actual malice and constitutional actual malice." *Anderson v. Baker, Franklin App. No. 08AP-438, 2008-Ohio-6919.*
[26] State and Federal courts recently have punished defamation with judgments near the $1 Billion amount.

178.    Favoring the application of Florida contract law is the fact that Plaintiff was domiciled in Florida when the contract was made, and Defendants knew that when the hotel reservation was made. Favoring the application of Ohio contract law is that the services to be provided were in Ohio.

## The Elements of the Contract

179.    Florida law, like other states, define the elements of a valid contract as 1) Offer, 2) Mutual Consent, 3) Consideration, 4) Legality of the contract terms.[27] The parties must also have legal capacity to agree to a contract and the contract must be conscionable to be enforceable.

180.    Plaintiff was offered the terms of the contract via the Hilton reservation system (see ¶¶ 34-35). The consideration was the hotel fee. Plaintiff fulfilled that element when he paid for the first week in advance (see ¶ 39), and then paid in full every week thereafter. Payments totaled at least $21,692, for the stay that lasted from February of 2022 through September of 2022. Mutual consent occurred when Defendants accepted Plaintiff's money and allowed him to check in to the hotel. Creating a contract for a hotel stay is legal.

## Definition of Breach of Contract

181.    In Florida, *FWF, INC. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342 (S.D. Fla. 2007) *inter alia* define breach as, "The elements of a breach-of-contract claim are: (1) a valid contract; (2) a material breach; and (3) damages."

182.    In Ohio, *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 650 N.E.2d 863, 1995 Ohio 61 (1995), *inter alia* define breach as, "To prove a breach of contract claim, a plaintiff must show "the existence of a contract, performance by the plaintiff, breach by

---

[27] Of note, Florida is the only state to have a quirky "material breach" component, but other federal courts have been unable to understand it. See Florida Bar Journal Vol. 90, No. 3, March 2016, Pg 36

the defendant, and damage or loss to the plaintiff." *Nilavar,* supra, at 483, 738 N.E.2d 1271, quoting *Doner v. Snapp* (1994), 98 Ohio App.3d 597, 600, 649 N.E.2d 42."

183.    Defendants (Robert Hoying, Brent Crawford, and Noble Park Properties LLC), acting as the "principle" employers, individually, and by and through its agents and/or joint venturers (Hilton Domestic Operating Company Inc. is the joint venture and Shaner Hotel Group LP is the agent), created a valid contract with Plaintiff.

184.    Defendants breached the contract by not providing the agreed upon services of a safe and private hotel room for long-term stay. Instead, they provided incompetent services by negligent and incompetent hotel staff (see ¶¶ 43-51, 68-74) who illegally entered Plaintiff's room (see ¶¶ 52-58) and ended the long-term stay with a demand that Plaintiff leave. Defendants had no justification for demanding Plaintiff to leave.

185.    Defendants also breached the contract by failing to tell Plaintiff that his stay would be limited to 270-days (see ¶¶ 40, 68). Home2 Suites is advertised as a long-term-stay hotel, complete with a kitchen. Therefore, Plaintiff was "offered" a long-term-stay hotel as part of the contract.

186.    Plaintiff suffered damages by paying for a service that he did not received. He was forced to leave sooner than he otherwise would have chosen (se ¶¶ 71-72), meaning it the hotel did not provide the long-term-stay that was part of the contract.

187.    Defendants also did not provide basic housekeeping services (see ¶¶  44-51). Plaintiff was unable to easily move and find a better hotel because he had an amount of personal belongings with him equivalent to a small studio apartment. U.S. Mail was also being forwarded to him. It was not as simple as checking out and taking his business elsewhere.

188.    When the invasion of privacy and demand to leave incidents occurred, Plaintiff was

greatly inconvenienced by having to find a new place to stay while in the middle of dealing with a medical emergency with his father. This caused severe emotional distress. Also, being humiliated by Defendants has left Plaintiff with mental anguish, wondering for two-years about the reasons for their actions.

189.    WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants in an amount in excess of $22,000 (Twenty Two Thousand U.S. Dollars) plus costs and interest, and any other costs this Court deems is fair.

## **COUNT 6: OHIO CSPA VIOLATION**

(Ohio R.C. §1345.02 Consumer Sales Practices Act.- Unfair or Deceptive Act)

190.    Plaintiff realleges as though fully set forth at length, and incorporates herein by reference, all of the allegations in ¶¶ 1-108 and statements made above and contained herein. Specific allegations are listed by paragraph below to comply with the Order.

191.    Defendant Noble Park Properties, LLC is a shell company and alter ego of the individual defendants, Hoying and Crawford, who act in unison as co-owners and co-managers. Therefore, allegations in this Count apply to all Defendants.

192.    Defendants (Robert Hoying, Brent Crawford, and Noble Park Properties LLC), acting as the "principle" employer, individually, and by and through its agents and/or joint venturers (Hilton is the joint venture and Shaner Hotel Group LP is the agent), committed an unfair and deceptive act in its consumer transaction with Plaintiff in violation of Ohio R.C. §1345.02 Consumer Sales Practices Act ("CSPA").

193.    Specifically, Defendants represented to Plaintiff that they would provide a safe and private hotel room for a long-term-stay (see ¶ 35). The property was presented as a Hilton property.

194.    Instead, Defendants provided multiple incompetent managers, one of whom was

fired (see ¶¶ 43-51, 68-74, 52-58), who illegally broke into Plaintiff's apartment (see ¶¶ 52-58).

195.    The so-called "Hilton" property was actually a Hoying property (see ¶ 94 ) managed by Shaner offered to Plaintiff as a bait-and-switch scam.

196.    Therefore, Defendants violated the "deceptive" section of Ohio R.C. §1345.02(B)(2), "1) That the subject of a consumer transaction has...performance characteristics...or benefits that it does not have".

197.    Defendants were also unfair and deceptive when they engaged The Cincinnati Insurance Company, which led to that insurance company calling Plaintiff and investigating, and then stating in writing that the entire insurance claim was initiated Plaintiff when it was not (see ¶ 161). When asked directly, the lawyer for Defendants, Kessler, denied any involvement (see ¶ 196), which was a lie and deceptive. An emailed cease-and desist (see ¶ 196) demanding that the insurance denial letter be corrected went ignored, further violating the CSPA requirement to make amends when demanded.

198.    As a result of Defendants' violation of §1345.02, Plaintiff has suffered actual economic damages of more than $22,000, (i.e., that being the amount paid for the long-term stay). The CSPA allows Plaintiff to recover three-times those actual damages.

199.    WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants in an amount in excess of $66,000 (Sixty Six Thousand U.S. Dollars) plus costs and interest, and any other costs this Court deems is fair.

## **JURY DEMAND**

200.    Plaintiff requests a trial by a jury of his peers.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff demands judgment against all Defendants as follows:

A.      On **Count 1 (Negligence)**, Plaintiff demands judgment in his favor in the amount of $2,000,000 (two-million dollars), his attorney fees, and costs incurred in the prosecution of this action.

B.      On **Count 2 (Negligent Infliction of Emotional Distress)**, Plaintiff demands judgment in his in the amount of $2,000,000 (two-million dollars), plus his attorney fees and costs incurred in the prosecution of this action.

C.      On **Count 3 (Invasion of Privacy)**, Plaintiff demands judgment in the amount of $2,000,000 (two-million dollars), plus his attorney fees and costs incurred in the prosecution of this action.

D.      On **Count 4 (Defamation)**, Plaintiff demands judgment in his favor for $25,000,000 (twenty five million dollars), plus attorney fees and costs incurred in the prosecution of this action.

E.      On **Count 5 (Breach of Contract)**, Plaintiff demands judgment in his favor for $22,000 (sixty-six thousand dollars), plus the cost of inflation at 20% per year, plus attorney fees, and costs incurred in the prosecution of this action.

F.      On **Count 6 (CSPA Violation)**, Plaintiff demands judgment in his favor for $66,000 (sixty-six thousand dollars), plus the cost of inflation at 20% per year, plus attorney fees, and costs incurred in the prosecution of this action.

Respectfully submitted,   8-21-204

Steven Greer, *pro se*
Phone (212) 945-7252
steve@greerjournal.com

41