FILED BY_____D.C.

OCT 22 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. PIERCE

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Steven Greer,

     Plaintiff,

v.

Robert Hoying;
Brent Crawford; and
Noble Park Properties LLC

    Defendants

Case No. 2:24-cv-14258-AMC

SECOND AMENDED COMPLAINT

1. Negligence

2. Invasion of Privacy

3. Breach of Contract

4. CSPA Violation


JURY TRIAL

# CONTENT

RULES for AMENDING COMPLAINTS ................................................................ 1

INTRODUCTION ................................................................................................... 2

PRO SE RIGHTS .................................................................................................... 3

PARTIES ................................................................................................................. 3

    Steven Greer ...................................................................................................... 3

    Robert Hoying..................................................................................................... 4

    Brent Crawford .................................................................................................. 5

    Noble Park Properties, LLC................................................................................ 5

DIVERSITY of CITZENSHIP JURISDICTION ..................................................... 6

PERSONAL JURISDICTION.................................................................................. 6

VENUE..................................................................................................................... 9

RESPONDEAT SUPERIOR .................................................................................... 11

FACTUAL ALLEGATIONS ................................................................................... 12

    The Negligent and Illegal Entry of Plaintiff's Room and Invasion of Privacy ............... 16

    The Initial Defamation....................................................................................... 18

    Negligent Handling of the Incident .................................................................... 20

    This Was Part of a Post-COVID Hotel Industry Scam....................................... 21

    The Most Recent Defamation and Fraud ........................................................... 22

    NOBLE PARK PROPERTIES, LLC is an ALTER EGO.................................... 24

The INDIVIDUAL DEFENDANTS are not IMMUNE ......................................................... 26

    Piercing the Corporate Veil ....................................................................................... 26

    Hoying and Crawford are Liable Per Ohio Law ........................................................ 27

ABOUT the EVIDENCE ................................................................................................... 29

CHOICE of LAW ............................................................................................................... 29

EFFORTS by PLAINTIFF to AVOID LITIGATION ....................................................... 29

COUNT 1: NEGLIGENCE ................................................................................................ 31

COUNT 2: INVASION of PRIVACY ................................................................................ 33

COUNT 3: BREACH of CONTRACT ............................................................................... 36

    Which State Contract Law Should be Applied? ......................................................... 36

    The Elements of a Contract ....................................................................................... 37

    The Express Contract ................................................................................................. 37

    The Implied Contract ................................................................................................. 38

    Definition of Breach of Contract ............................................................................... 38

    How the Contract was Breached ................................................................................ 38

COUNT 4: OHIO CSPA VIOLATION .............................................................................. 41

JURY DEMAND ................................................................................................................ 43

REQUEST FOR RELIEF .................................................................................................. 44

# RULES for AMENDING COMPLAINTS

1.      FRCP governs the amendment of complaints:

> Rule 15. Amended and Supplemental Pleadings
> (a) Amendments Before Trial.
> (1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
> (2) *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

2.      Although this is the Second Amended Complaint ("SAC"), it is only so due to a court order (ECF 7) that required the first amended complaint (ECF 8), and that amended complaint was filed before any responsive pleadings were made. Per FRCP 15(a)(1), this SAC should be considered as the one allowed "as a matter of course". The purpose of that section of the rule is to allow parties to address arguments made in responsive pleadings by modifying the complaint and avoid unnecessary motions later on. FRCP 1 states, "(The rules) should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

3.      Should this Court disagree, then the next section of FRCP 15(a)(2) states, "The court should freely give leave" to amend when justice so requires. The opposition did not reply when asked for consent and Plaintiff now seeks leave of this Court to amend.

## INTRODUCTION

4. This is a Complaint by an individual plaintiff that also exposes a wider scheme perpetrated by the hotel industry. So as to evade landlord-tenant laws that should govern their extended-stay "hotels", the hotels have adopted illegal strategies to scare tenants out of their apartments so as to avoid local laws that limit the time of stay for "hotel" guests. That is what happened here when Defendants fabricated a story about "altercations" committed by Plaintiff. When that fails, hotels then move to other illegal strategies to evict.

5. While this is not a class action suit, Plaintiff is not alone. Negligence related to hotel guest privacy is rampant.

6. For example, Plaintiff recently learned of a similar incident happening to a man in Texas staying at another "Home2 Suites by Hilton". In that incident in 2024, after the Hilton reservations systems crashed, the Texas hotel staff broke into the man's room (and also others in the same hotel) while he was undressed, forcing him to draw his firearm thinking he was being robbed. As another example, several years ago, ESPN sports personality Erin Andrews had her privacy severely violated when negligence by the hotels allowed nude video of her to be captured multiple times over a span of years.

7. The assault that occurred to Plaintiff in this instant case forced him to relocate while he was in the middle of handling a medical crisis of his father with dementia. It could not have occurred at a worse time. His father subsequently became the victim of improper care in a nursing home and was killed.

8. As is so often the case, Defendants made matters worse by trying to cover up for their actions. They engaged in a strategy of defamation that violated other torts.

9. Plaintiff has been lenient with Defendants regarding his demands. They have abused that generosity. Now, Plaintiff has no other recourse but to sue.

2

## PRO SE RIGHTS

10.     The Judiciary Act of 1789, 1 Stat. 73, 92 states, "That in all courts of the United States, the parties may plead and manage their own causes personally or by assistance of such counsel or attorneys", which was signed into law by George Washington.[1] From then on, state and federal courts have permitted *pro se* litigation in civil and criminal cases.[2]

11.     Florida and Ohio lack a statute that specifically addresses the rights of *pro se* litigants. However, the Civil Rules of Procedure address *passim* situations involving *pro se*. In addition, State Supreme Courts have commissioned studies concluding that *pro se* litigants cost the court system less time and effort than lawyers,[3] Florida established the Florida Commission on Access to Civil Justice to assist pro se litigants,[4] and Ohio has a task force that encourages the courts to assist *pro se* litigants.[5]

## PARTIES

### Steven Greer

12.     Plaintiff, Steven Greer ("Plaintiff"), is an individual domiciled in Florida since 2019. This fact was established in *Greer v. Fox News* 1:20-cv-05484 (Doc No. 121) S.D.N.Y. 2020. That Order ruled on Defendants' Motion to Dismiss, which argued diversity jurisdiction did not apply. Plaintiff was ruled to be domiciled in Florida. The 2d. Cir. heard

---

[1] George Washington was not a lawyer.

[2] The authors of the Constitution knew that access to affordable and honest lawyers was a problem. Only 28 of the 56 signers of the Declaration of Independence were lawyers. Most of the authors of The United States Constitution were not lawyers, and only 22 out 48 signers of the first version of the U.S. Constitution (i.e., the Articles of Confederation) were lawyers. When the actual Constitution was adopted, only 21 of the 39 convention delegates were lawyers. Also, President Andrew Jackson did not attend law school and yet became a judge and then President of the United States, indicating the acceptance of non-lawyer citizens dealing with legal matters. The aforementioned were all guided by the writings of John Locke, Montesquieu, Sir Edward Coke, and the Magna Carta. Those philosophies champion the individual's direct access to justice without the need for a lawyer. (paraphrasing from a book written by Plaintiff)

[3] The Judicial Counsel of California Statewide Action Plan for Serving Self-Represented Litigants

[4] Florida Commission on Access to Civil Justice

[5] Ohio Supreme Court Task Force on Access to Justice: 2015

this case as well in *Greer v. Fox News Media*, No. 22-1970-cv (2d Cir. Mar. 29, 2023).[6]

13.     Plaintiff temporarily lived in Ohio during the year of 2022, staying in an extended-stay property doing business as "Home2 Suites by Hilton" (a defendant), on an emergency basis to care for his ailing father.

14.     Plaintiff is a medical doctor licensed in several states and in good standing.[7,8]

## Robert Hoying

15.     Defendant Robert Hoying is an individual who co-owns Noble Park Properties. He is domiciled in Ohio and is a citizen of the United States of America.[9]

16.     Mr. Hoying's personal address is 9233 Hyland Croy Rd Plain City, OH 43064. His business address is 555 Metro Place North, Suite 600, Dublin, OH 43017, and Phone (614) 335-2020.

17.     Robert Hoying does not enjoy immunity from the action of the co-defendant Limited Liability Corporation, which he owns. Actions by Hoying and the improper management of the LLC have pierced the corporate veil.

---

[6] Plaintiff defeated two motions to dismiss in this case. However, he appealed the magistrate report that removed key causes of action. Plaintiff lost in the 2d. Cir. on theory that federal copyright law preempted the state law claims. Plaintiff disagrees. The case continues in California court with a decision due in November.
[7] Of note, information about Plaintiff has been scrubbed from the Internet. Since 2012, after writing Wall Street Journal Op-Eds critical of President Obama, unbeknownst to him until this year, Plaintiff has been the target of the vast censorship apparatus exposed in the Supreme Court case of *Murthy v. Missouri*, 144 S. Ct. 7, 217 L. Ed. 2d 178 (2023) and District Court case *Kennedy v. Biden*, No. 3: 23-CV-00381 (W.D. La. Feb. 14, 2024). After the Supreme Court lifted the injunction in *Murthy v. Missouri*, those bad actors escalated their censorship. Plaintiff had his Amazon.com-published book critical of Anthony Fauci removed (i.e. digital book burning) from the market despite having full copyright registration and it having been sold on the market for three-years (see Plaintiff's brief in *Kennedy v. Biden*, Document No. 42). Now, search engines are removing almost all results for "Steven E. Greer, MD", etc. For example, Steven M. Greer, MD, the UFO believer, is what turns up instead.
[8] List of news articles, etc. on Plaintiff that are no longer found by Internet searches https://greerjournal.com/test-2/
[9] Mr. Hoying was the quarterback for the National Champion Ohio State University Football team in the 2002-2003 season, defeating the University of Miami. He leveraged that goodwill into a real estate company in Central Ohio.

4

**Brent Crawford**

18.     Defendant Brent Crawford is an individual who co-owns Noble Park Properties. He is domiciled in Ohio and a citizen of the United States of America.

19.     Mr. Crawford's personal address is 95 N Riverview St Unit 512 Dublin, OH 43017. His business address is 555 Metro Place North, Suite 600, Dublin, OH 43017, and Phone (614) 335-2020.

20.     Like his business partner Robert Hoying, Brent Crawford also does not enjoy immunity from the action of the co-defendant Limited Liability Corporation, which he owns. Actions by Hoying and the improper management of the LLC have pierced the corporate veil.

**Noble Park Properties, LLC**

21.     Defendant Noble Park Properties, LLC ("Noble Park") is an Ohio corporate entity with an office address listed as at 555 Metro Place North, Suite 600, Dublin, Ohio 43017. It is co-owned by defendants Robert Hoying and Brent Crawford.[10] There are no other Nobel Park Properties LLC shareholders. All LLC members and owners are domiciled in Ohio. The agent for this LLC listed with the Ohio Secretary of State ("SoS") is also domiciled in Ohio.

22.     Noble Park Properties, LLC changed its name to Dublin Home 2 Investments, LLC. However, the original LLC formation documents remain under the name of Noble Park Properties, LLC, as detailed below in the section that explains how Noble Park is legally an "alter ego" shell company. Therefore, Noble Park is the proper name for this shell company defendant.

---

[10] That information is provided in the letter below from Hilton Domestic Operating Company Inc. to Robert Hoying and Noble Park Properties, LLC.

5

## DIVERSITY of CITZENSHIP JURISDICTION

23. This Court has federal jurisdiction due to diversity of citizenship pursuant to 28 U.S.C. §1332(a)(1).

24. The matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

## PERSONAL JURISDICTION

25. Federal district courts determine personal jurisdiction of parties outside of the forum district based on state laws and also the Due Process Clause of the Fourteenth Amendment of the Constitution. That process is explained in *Peruyero v. AIRBUS SAS*, 83 F. Supp. 3d 1283 (S.D. Fla. 2014):

> "To determine whether personal jurisdiction exists over an out-of-state defendant, courts undertake a two-step analysis. First, a court must determine whether, pursuant to state law, the applicable state long-arm statute is satisfied. Second, if the state long-arm statute is satisfied, the court must consider "whether the exercise of jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." The Due Process Clause requires that the defendant have minimum contacts with the forum state so that the exercise of personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. Both parts of the test must be satisfied for a court to exercise personal jurisdiction over a non-resident."

26. For the first step of that analysis, Florida's long-arm statute, Fla. Stat. § 48.193(1)(a) is also a two-part test. First, it defines specific acts by a defendant that would allow the court to hold personal jurisdiction (Pertinent sections included with underlining for emphasis):

> 48.193 Acts subjecting person to jurisdiction of courts of state. (1)(a) A person, whether or not a citizen or resident of this state, who personally <u>or through an agent</u> does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

6

1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state...

7. Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

9. Entering into a contract that complies with s. 685.102.

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

27. In this instant case, all Defendants, directly and through their agents, conduct business in Florida via Internet hotel reservation systems. They also breached a contract involving one party who is a resident of Florida (i.e., Greer). Thus, the first part of the test has been met.

28. For the second part of the test, often called the "minimum contact" test, all Defendants have minimum contact with Florida by conducting Internet hotel reservation business there.

29. The guiding case law on what defines an Internet business is *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997): "At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper."

30. In this instant case, all Defendants operate a hotel business that reaches Florida and accepts reservations and payments via the Internet. Below is one of many examples of how and where a person in Florida can make an Internet reservation with the Defendants' property.



31.    Hence, per *Zippo*, they are conducting business in Florida and have "minimum contact" with Florida.

32.    Numerous cases from this 11th Cir. and elsewhere have concluded that a business in one state conducting business in another via the Internet, such as hotel reservations, are subject to long-arm personal jurisdiction in the forum state. *Del Valle v. Trivago GmbH*, 56 F.4th 1265 (11th Cir. 2022), *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201 (Fla. 2010), and *American Girl, LLC v. Zembrka*, No. 21-1381 (2d Cir. Sept. 17, 2024) are three recent decisions. Connecticut courts also issued a decision in *Gates v. Royal Palace Hotel*, 1998 Ct. Sup. 15407, 23 CLR 670 (Conn. Super. Ct. 1998).

## VENUE

33.    Venue is proper in this Court pursuant to Title 18 U.S.C. §§ 1391(b)(2). The general venue statute permits suit in these places:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

34.    In this instant case, the Court has personal jurisdiction over Defendants because, (a) they conduct business in Florida via Internet hotel reservations (per the Personal Jurisdiction section above), and (b) after the initial hotel assault occurred to Plaintiff in Ohio during 2022, significant events have occurred since then while Plaintiff has returned to Florida, which is a time from 2023 to current day. A written contract for settlement was offered by Defendants to Plaintiff while he was living back in Florida (see below), and new acts of defamation occurred in Florida (see the Cincinnati Insurance Company details below).

35.    "A defendant can challenge venue under Federal Rule of Civil Procedure 12(b)(3). The court must determine whether the case falls within one of the three categories set out in§ 1391(b)." *Rucker v. Great Dane Petroleum Contractors, Inc.* 2:21-cv-207 (ECF 14, Order denying the motion to dismiss for improper venue).

36.    "[i]n most instances, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great Western United Corp.,* 443 U.S. 173, 183-184, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979).

9

37.    In this instant case, there will be no travel to Florida required by Defendants prior to a trial. Also, discovery depositions will be conducted in Ohio, per rules.

38.    Defendants bear a heavy burden in challenging this venue. "We have noted in contexts unrelated to forum-selection clauses that a defendant "invoking *forum non conveniens* <u>ordinarily bears a heavy burden in opposing the plaintiff's chosen forum</u>." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Co.,* 549 U.S. 422, 430, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007). That is because of the "hars[h] result" of that doctrine: Unlike a § 1404(a) motion, a successful motion under *forum non conveniens* requires dismissal of the case. *Norwood,* 349 U.S., at 32, 75 S.Ct. 544. That inconveniences plaintiffs in several respects and even "makes it possible for [plaintiffs] to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate." *Id.,* at 31, 75 S.Ct. 544 (internal quotation marks omitted)." *Atlantic Marine Const. v. US Dist. Court,* 571 U.S. 49, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013).

39.    The 11th Cir. weighed in, "Under the federal standard, "dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and <u>where the plaintiff is unable to offer any specific reasons of convenience supporting his choice</u>." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249, 102 S.Ct. 252, 262, 70 L.Ed.2d 419 (1981)." *Sibaja v. Dow Chemical Co.,* 757 F. 2d 1215 - Court of Appeals, 11th Circuit 1985.

40.    In this instant case, <u>the Complaint is not vexatious, by definition,</u> because Defendants have already offered a settlement agreement after Plaintiff made extraordinary effort to mitigate damages, and the large corporate <u>Defendants will not be unduly burdened.</u> Lastly, Plaintiff cannot feasibly travel to Ohio for a trial given the cost and time away from work (i.e. "<u>specific reasons of convenience</u>").

10

41.    A trial will not be granted easily in this or any other federal court. Extensive briefing on motions to dismiss and summary judgment will ensue. Should this case pass those hurdles, then Defendants will not be unfairly burdened by a trial in Florida.

## **RESPONDEAT SUPERIOR**

42.    The doctrine of *respondeat superior* applies. Defendants have vicarious liability for their agents.

43.    Defendants employ a hotel managing company called Shaner Group. Defendants, individually and jointly act as the "principal" employer of Shaner Hotel Group, LP, which is the "agent".

44.    Shaner and their staff, as the agents, committed some of the torts in the claims of this Complaint. These were actions well within the scope of the agent's employment, (i.e., to manage hotels).

45.    Shaner the agent was managing the hotel in a way that benefitted the principal (i.e., by collecting money from customers). The actions that harmed Plaintiff (i.e., illegal eviction, defamation, invasion of privacy, etc.) were performed to benefit the principle (i.e., actions meant to evade landlord-tenant law and streamline operations legally, *inter alia*).

46.    Shaner's actions were likely explicitly approved by the principle and were certainly implicitly approved. A jury will decide that.

47.    Shaner is not an independent contractor per the balancing tests of the restatement of the law treatise.[11] A jury will decide that if it is challenged by Defendants. Also, whether or not *respondeat superior* applies in this instant case is a matter for a jury to decide as well.

48.    The above facts are summarized by The Supreme Court of Ohio. In *Davis v. The May Dept. Stores, Co.*, 2001-Ohio-1362, the Court ruled:

---

[11] https://www.law.cornell.edu/wex/respondeat_superior

11

It is well-established that in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment. Moreover, where the tort is intentional, *** the behavior giving rise to the tort must be "calculated to facilitate or promote the business for which the servant was employed ***."*Byrd v. Faber* (1991), 57 Ohio St.3d 56, 58. Significantly, "[t]he willful and malicious character of an employee's act does not always, as a matter of law, remove the act from the scope of employment." *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 330. "'When an employee diverts from the straight and narrow performance of his task, the diversion is not an abandonment of his responsibility and service to his employer unless his act is so divergent that its very character severs the relationship of employer and employee. ***'" (Alterations original.) *Id.*, quoting *Stranahan Bros. Catering Co. v. Coit* (1896), 55 Ohio St. 398, 410. Furthermore, the determination of "whether an employee is acting within the scope of his employment is [generally] a question of fact to be decided by the jury." *Osborne*, 63 Ohio St.3d at 330. It only becomes a question of law when reasonable minds can come to but one conclusion. *Id.*

## FACTUAL ALLEGATIONS

49.    In February of 2022, Plaintiff was forced to relocate to Ohio in order to help his elderly father with dementia. An emergency situation had developed. His father had been abruptly abandoned alone at his Delaware, Ohio house with no caregiver.

50.    On February 7, 2022, looking for a hotel, Plaintiff used the Hilton website to find the Dublin, Ohio property doing business as "Home2 Suites by Hilton" and book a reservation.

51.    Plaintiff had been a frequent customer of Hilton. On the drive Ohio, he stayed at a Hilton in Memphis, etc. Greer had 573,000 Hilton-points at the time, which is a very large amount qualifying him for the highest Hilton rewards ranking.

12



52.    On February 16th, 2022, Plaintiff checked into the Shaner-managed property in Dublin, Ohio, which was doing business as "Home2 Suites by Hilton" (a defendant). He thought it was owned and operated by Hilton, but it was not. In fact, it is a Crawford-Hoying property operated by their agents. Shaner is the agent used to provide the human staff for operations.

53.    Upon checking in, there were no signs that stated the property was owned and operated by anyone other than Hilton. The signage and paperwork all indicated that it was a Hilton hotel.

54.    Plaintiff gave the desk staff his credit card, and paid in advance for one week an amount of $1,064.62, thus executing the contract with all Defendants. The original reservation made through Hilton did not require upfront payment.

55.    Plaintiff asked the front desk when checking in if he could stay longer than five days and was told that he would be able to do so. Plaintiff told the staff that he did not know how

13

long he would stay, indicating an indefinite period. When Plaintiff renewed his stay, which was approximately every two weeks, he was never told that he would have to leave at some point.

56.     Of note, Plaintiff was never informed upon checking in that Ohio law limits "transient" hotel stays to 270-days. If guests stay longer than that, then the "transient hotel" is classified as an apartment complex, affecting city and county zoning laws, etc.

> **"Ohio Rev. Code Section 3731.04** | Types of accommodations offered by hotels- …
>
> A transient hotel also may allow a guest to stay in a transient sleeping room for a continuous period of two hundred seventy days or less if the transient hotel satisfies the requirements specified in section 3731.041 of the Revised Code."

57.     Plaintiff was never informed that the amount of time he could stay at this hotel was limited.

58.     When Plaintiff's hotel stay lasted longer than 30-days, <u>he became a tenant just like an apartment dweller</u> and enjoyed the protection of laws against frivolous harassment from a landlord or unjust eviction. Had he stayed longer than 270-days, Ohio law is clear that the property would then have become a residential apartment (see footnotes 14-17 below).[12]

59.     The General Manager of this Shaner property at the time was a man named Chaz Le ("Chaz"). Plaintiff was on good terms with Chaz during his entire stay.

60.     The only notable problem with Plaintiff's stay was a fairly routine complaint about the housekeeping staff being reluctant to completely change the sheets, make the bed, etc., which were required by law. The neglect of Plaintiff's room exceeded the standard post-

---

[12] To Plaintiff's knowledge, this instant case is the first one to expose, in Ohio at least, this common hotel industry business model of extended-stay "hotels" as actually being nothing but apartment complexes that skirt landlord-tenant law.

COVID hotel industry policy of merely ending daily housekeeping. Even during the once-weekly visits, the Home2 Suites Shaner <u>staff were trying to avoid changing the bed linen, towels, etc</u>.

61. Plaintiff also noticed other signs of poor management. For examples, the ground-floor gym had a large array of dumbbells stolen because of the lax security. Also, <u>the carpet in the hallway of the lobby was badly stained</u> because the staff did not place mats on the floor to collect the water that dripped from wet guests exiting the indoor swimming pool (chemicals in the pool caused stains).

62. In addition, a front desk employee engaged with Plaintiff in odd and inappropriate conversations, often telling him her personal stories.

63. Plaintiff stayed in the hotel from February through August (seven-months) without any incident to his knowledge. <u>No one from the hotel had ever spoken to Plaintiff about any sort of alleged misconduct</u>. Defendants have never made any allegations that Plaintiff was informed of any problems. If a real "altercation" worthy of eviction had taken place, it would have been the fiduciary responsibility of the General Manager, Chaz, to notify Plaintiff immediately.

64. Then, unbeknownst to Plaintiff, Shaner made changes to the management of the Home2 Suites in September of 2022. <u>They fired Chaz</u> and replaced him with a roving regional manager named Morris Siyman ("Siyman").

65. Siyman held meetings with his staff and took inventory of the long-term-stay guests. Plaintiff had been staying in the hotel for approximately 210-days. Thus, the 270-day limit for guests, per Ohio law, was approaching. Plaintiff was unaware of this time limitation to his stay.

66. Plaintiff believes that the manager of housekeeping defamed him to this new

management staff. That was in retaliation for his previous complaints.

**The Negligent and Illegal Entry of Plaintiff's Room and Invasion of Privacy**

67.    On September 12th, 2022, <u>before</u> Plaintiff was aware that Mr. Siyman was the new

manager and Chaz had been fired, he received a knock on his hotel room door around 10:00

AM by a man claiming to be housekeeping. It was Mr. Siyman, the new acting manager,

who was defrauding Plaintiff by lying about his job title. In fact, he was not "housekeeping"

at all.

68.    Plaintiff, who was still in bed and disrobed, said through the closed door of the hotel

room that he did not wish to have housekeeping do service at that time. But the man persisted

on knocking.

69.    By this time, Plaintiff suspected a criminal intrusion was about to happen and began

filming the door from his bed.[13] The conversation went as follows:

> Siyman:    Door    knocks-    "This    is
> housekeeping."
>
> Greer from inside the room: "No thank you.
> Come back please."
>
> Door opens with Siyman and hotel employee
> woman standing next to him staring at Greer
> lying in bed. Lights are out in the room.
> Curtains are shut.
>
> Greer: "What's going on here?"
>
> Siyman: "I am the regional manager...they
> called    me...the    hotel    called    me...the
> management...we are going to have to ask you
> to leave..."
>
> Greer: "For what reason?"
>
> Siyman: "There has been some altercation that

---

[13] Plaintiff feared for his safety much like the man in the Texas hotel did when he pulled a gun on the intruders.

16

was being aware to and I want to do this the right wat Mr. Gry [sic]"

Greer: "I'm in the bedroom. There was no altercation. I have no idea what is going on."

Siyman: "A couple of times in the past few weeks…"

Greer: "Let me get some clothes on. I'll come down and talk to you."

Siyman: "OK. I'll be here another 30-minutes."
(door closes)



70. Plaintiff was greatly alarmed and suffered severe mental anguish, embarrassment, and humiliation from this illegal break-in and trespassing into his <u>apartment</u>. In fact, this litigation years later is evidence of those lingering bad memories.

71. Plaintiff asked if they could continue the bizarre encounter over the phone rather than in person. Mr. Siyman agreed, went downstairs, and Plaintiff called the front desk. He spoke to Siyman.

17

72.     This incident was an act of illegal entry by a landlord.[14] Hotels in Ohio, and most other states, that allow guests to stay longer than 30-days are not exempt from landlord-tenant law[15,16,17]. In this instant case, the room in which Plaintiff stayed for many months was an extended-stay (i.e., not transient) property with suites that have kitchens, etc. They are normal apartments with no contracts or clauses that tell the guests they are <u>not</u> protected by Ohio landlord-tenant law. A reasonable person and jury would assume that they are apartments and not transient hotels.

73.     Defendants should be well aware of these hotel and landlord-tenant laws. Therefore, it was an act of negligence for them to illegally enter Plaintiff's room and invade his privacy without a 24-hour notice and no pretext of an emergency.

## The Initial Defamation

74.     A formal count of defamation has been removed in this amended complaint because Ohio case law does not apply the "continuing violation" doctrine to defamation, making most of the defamatory actions beyond the statute of limitations. However, this tort damage is still relevant to the other counts.

---

[14] "Ohio R.C. Section 5321.04 | Landlord obligations.(A)(8)" "Except in the case of emergency or if it is impracticable to do so, give the tenant reasonable notice of the landlord's intent to enter and enter only at reasonable times. Twenty-four hours is presumed to be a reasonable notice in the absence of evidence to the contrary."

[15] Ohio landlord-tenant law, O.R.C. 5321.01(C)(3), does exempt "hotels and motels" from the definition of "residential premises" governed by landlord-tenant law, but also states, "and other similar facilities where circumstances indicate a transient occupancy", implying that "hotel" in that law refers to short-term stays under 30-days. The Ohio definition of "transient stay hotel" is, per O.R.C. Section 3731.01, ""Transient hotel" means any structure...a place where sleeping accommodations are offered for pay to transient guests for a period of thirty days or less, including...a hotel, motel, motor hotel, lodge, motor lodge, bed and breakfast, or inn." Ohio Rev. Code Section 3731.04 defines "transient hotel" as a place allowing guests to stay under 270-days.

[16] This conflicting law in the above footnote is why it is also common law in Ohio that a hotel guest staying longer than 30-days is considered to be a permanent tenant and not a "transient" one. The Dublin Police, in this instant case, and many other police forces in Ohio, will not evict a guest if they have stayed longer than 30-days, unless there is a landlord-tenant court order. Ohio law makes it clear that any guest staying over 270-days is not a "hotel" guest in a transient property. The property residential subject to landlord-tenant law.

[17] Plaintiff is not using these landlord-tenant laws for any stand-alone count or claim. These Ohio laws are noted to clarify that Defendants did not have the right to evict plaintiff, without any prior notice, and without resorting to the courts. Therefore, their actions were negligent.

18

75. Plaintiff called the front desk within minutes of the hotel room invasion and spoke to Siyman. Plaintiff was speaking normally during this call, but Siyman kept accusing him of yelling and being aggressive. Plaintiff believes he was spinning a tale for others in the office to hear so as to justify his attempt to evict Plaintiff. His actions were malicious and knowingly false.

76. Mr. Siyman said that there had been "multiple altercations in the past few weeks". Third-parties in the office heard this. Plaintiff had no idea what he was talking about. Siyman later stated that there was just one "main incident", but refused to provide any details whatsoever.

77. Siyman then admitted that he actually personally knew nothing about the alleged "altercation" and was simply told by "management" that a "decision has been made" to evict Plaintiff.

78. Third-parties in the office sitting by Siyman heard these defamatory accusations that were published.

79. Siyman then demanded that Plaintiff leave within "24-hours", or "by tomorrow morning."

80. Siyman had no interest in hearing Plaintiff's side of the story (Notably, Plaintiff still does not know what alleged incident occurred despite numerus conversations with Defendants' lawyer, etc.).

81. On the evening of September 12th, Plaintiff called the Dublin, Ohio Police and spoke to a supervisor. The Dublin Police Officer told him that Mr. Siyman had already called them trying to use police to evict Plaintiff and the police refused. Therefore, Plaintiff was portrayed by Siyman to the police as a criminal, which is *per se* defamation.

## Negligent Handling of the Incident

82.    The Dublin Police officer provided to Plaintiff an interesting fact. He said that their department had received frequent complaints from guests about this hotel management. Therefore, Defendants were negligent for not addressing what appears to be a recurring problem.[18]

83.    Plaintiff researched the ownership of the property and learned of the Shaner Group, which is a hotel management company employed by the Hoying Dependents.

84.    On September 13th, 2024, he called Lisa Larson ("Larson"), who is listed as the "Global Hotel Operations Officer" for Shaner.[19] Larson mentioned rather out of the blue that Ohio law limits the length of stay of guests to 270-days. Plaintiff believes that this slip of the tongue explains one motivation for Shaner Group's actions.

85.    Plaintiff explained the details above. Larson was supposed to research the matter and call back. She never did. That was yet another act of negligence by Defendants.

86.    Larson never approved the continued stay of Plaintiff or reversed the actions of Siyman. As far as Plaintiff knew, the hotel was still trying to evict him.

87.    Then, on September 18th, 2022, the hotel told Plaintiff that they needed to move him to a new room. The act seemed like a nefarious trap. It is a common scam of hotels to use "room shuffling" to maintain the "transient" status of the guests.[20]

88.    Out of fear and under duress that this room shuffle would expose him to more violations by the hotel staff, Plaintiff moved out of the Hoying property. He relocated into a nearby hotel on September 18th.

89.    On September 23rd, 2023, having not heard back from Larson, Plaintiff called her

---

[18] During discovery, Plaintiff plans to subpoena the Dublin Police.
[19] Larson is aware of this litigation that mentions her name.
[20] https://www.yashlaw.com/practice-areas/consumer-protection/residential-hotels-illegally-evicting-guests/

20

again. He was surprised to learn that Larson thought that the problem was resolved simply because Plaintiff had moved out on his own without being legally evicted.

90. Plaintiff requested a refund for the amount he had paid to Defendants. He received no reply. Again, Defendants' lack of communication was negligence and a violation of her fiduciary duty as a "global" manager.

**This Was Part of a Post-COVID Hotel Industry Scam**

91. Plaintiff researched his incident to see whether others had experienced similar violations. What he learned is that the hotel industry had schemed of ways [21] to handle the burgeoning population of extended-stay Americans who were driven out of their homes due to the COVID lockdowns and high unemployment.

92. The business model of offering "extended-stay" rooms normally meets a demand of business travelers who are unlikely to default on their contract. However, the people driven into these situations after the 2020 lockdowns were at high risk of being unable to pay the rent.

93. The problem for Defendants is that their entire business model is dubious. They are trying to offer extended-stay "hotels", but are actually operating apartments with "tenants" who enjoy the protections of landlord-tenant laws.

94. Therefore, rather than resort to courts for proper evictions and expose the unlawfulness of their "hotels", Defendants use the tactics of abruptly surprising guests with demands for immediate evictions based on fabricated allegations. When that "shock and awe" strategy fails, the managers then turn to local police for help. When that does not work,

---

[21] Here, a commercial real estate company, Costar, offers an instructional website: "How Hoteliers Can Avoid Turning Long-Term Guests Into Tenants- Pandemic Led to More Potential Hotel Landlord-Tenant Relationships"
https://www.costar.com/article/1115067271/how-hoteliers-can-avoid-turning-long-term-guests-into-tenants

they try to relocate the tenant into a new room (i.e., "28-day shuffle") to reclassify them as a transient guest that is no longer protected as a long-term guest.

95.     Defendants tried all of those steps in this instant case. If discovery in this case proves that Defendants have indeed intentionally engaged in these conspiracies, then class-action civil and criminal RICO cases could be initiated.

96.     This Complaint is not a class action. However, Plaintiff is not alone. Numerous other examples of similar incidents can be found. For example, an X.com account named @BrokenTruthTV tweeted how he was staying at another Home2 Suites by Hilton in Amarillo, Texas when management broke into a room. He had no clothes on and was forced to draw his firearm thinking he was being robbed. Plaintiff called the hotel and learned that numerous guests had experienced the same thing. Because the Hilton computer reservation system had crashed, management thought it was acceptable to open hotel rooms without permission.[22]



> **Broken Truth** ☑
> @BrokenTruthTV
>
> Hotel system glitched and crashed in Amarillo. Our room (last available) was somehow locked from the inside. The staff opened the door and there was an armed naked dude in it! The system registered the room as empty!
>
> 1:08 AM · 7/9/24 From Earth · **1.4K** Views

## The Most Recent Defamation and Fraud

97.     In April of 2024, Plaintiff drafted a Complaint and contacted various lawyers or

---

[22] Plaintiff plans to subpoena records about this series of incidents.

officers of Defendants. Settlement negotiations ensued.

98.     On June 6, 2024, Plaintiff received a call from an unknown woman who was reluctant to give details of the nature of her call. Her name was Sarina Denman and works for The Cincinnati Insurance Company. However, she was very suspicious and dodgy. She refused to state which defendant initiated her investigation.

99.     An email after the call from Denman stated,

> "As previously stated Hilton and Shaner are Additional Insureds. I am reaching out on behalf of Bridge Park Hotel LLC, not on behalf of Hilton. We are still investigating this matter."

100.    <u>In no way did Plaintiff initiate an insurance claim</u>. He simply answered a phone call from Ms. Denman.

101.    On June 17, 2024, Denman emailed Plaintiff a letter in the form a claims denial. The letter stated:

> "...We have attempted to appraise fairly and properly all of the information available to us regarding the damages. Being guided by these facts, it is our conclusion that there is no evidence that our insured was negligent or legally responsible for your claimed damages. <u>As such, we must respectfully deny your claim</u>. This declination is based upon information presently available to us. Should you have additional information that you feel may affect the liability position of The Cincinnati Insurance Company, please forward it to the undersigned for further review..." (emphasis added)

102.    Plaintiff immediately became alarmed after reading the fraudulent letter. It was clearly trying to misrepresent the facts as if Plaintiff were a claimant. He sent a cease-and-desist email to Denman to correct the lies, but the letter and was ignored.

103.    On June 20, 2024, Plaintiff spoke to a lawyer representing Hoying, Mr. Marc Kessler of Taft Law, and he denied that his client initiated a claim with Denman's company. The lawyer representing Shaner also denied any involvement. Plaintiff believes that Mr. Kessler

23

was lying.

104.    Clearly, Defendants were involved in this incident, are now falsely denying it, and knowingly misleading Plaintiff. That is "unfair and deceptive" per the R.C. §1345.02 Consumer Sales Practices Act.

105.    The Cincinnati Insurance Company's letter is also *prima facie* proof of defamation committed by Defendants. Defendants, while in their Ohio locations, "published" to Ms. Denman (a third party) false information about Plaintiff that led The Cincinnati Insurance Company reviewer, Ms. Denman, to view Plaintiff as a liar. There is no other explanation for the letter denying the "claim".

## NOBLE PARK PROPERTIES, LLC is an ALTER EGO

106.    Noble Park Properties, LLC was established as an Ohio LLC in 2015, per the Ohio SoS online database of companies. In 2019, Noble Park changed its name to Dublin Home 2 Investments, LLC for unknown reasons. Defendant and co-owner Brent Crawford signed the change-of-name form that is filed with the Ohio SoS. He is listed as the "Authorized Representative". However, there are no corporation filing documents under the name of Dublin Home 2 Investments, LLC. The LLC entity remains under the original articles of organization for Noble Park.[23] Therefore, Dublin Home 2 Investments, LLC is to be viewed as a "doing business as" name and not a separate entity or defendant.

107.    In 2015, Noble Park was the business entity that became the grantee (i.e., owner) of the deed for the hotel property where some of the actions core to this Amended Complaint occurred (i.e., the Home2 Suites by Hilton located at 5000 Upper Metro Place, Dublin, Ohio, 43017). There is no evidence that Noble Park is an actual real estate management company. The hotel is managed by Shaner Group; a company hired by individuals Hoying and

---

[23] That is why Dublin Home 2 Investments, LCC was removed as a defendant in this Amended Complaint.

24

Crawford.

108. The original listed company agent in the 2015 Noble Park Properties, LLC SoS filings is John A. Gleason, who was an Ohio lawyer at the time with an address listed on the LLC documents as 141 South High Street, Suites 2800-3200 and a phone number that goes straight to voicemail at (614) 296-1281. Phone messages left are not returned.

109. Now, The Columbus Bar Associations lists him as having only a P.O. Box linked to a solo practice at Gleason Law Office LLC, PO Box 768, New Albany, OH 43054-0768 (i.e., a different city than Columbus and the South High Street address). His email is listed as jgleason@gleasonlawofficellc.com. An email on August 16, 2024 from Gleason to Plaintiff lists his address as Gleason Law Office LLC, 4200 Regent Street, Suite 200, Columbus, Ohio 43219 (i.e., different from what is listed with the SoS). An Internet search of Mr. Gleason reveals nothing but lawyer spam ads [24], etc. Mr. Gleason has little presence on the Internet that is noteworthy, which is unusual for most practicing lawyers.

110. On August 27th, 2024, after the Complaint was filed, Mr. Gleason finally replied via email stating, "I no longer represent that entity. Thanks.", referring to Noble Park. However, as of the date of this SAC filing, there is no newly appointed agent registered with the SoS.

111. According to new 2022 Ohio law governing LLC's [25], Mr. Gleason has not met the requirements of an agent to maintain a valid LLC. He has changed addresses numerous times since the 2015 SoS filing and has not updated the SoS. His phone number on file with the SoS is also nonfunctioning.

112. Therefore, Noble Park Properties, LLC is not in compliance with Ohio law. It was

---

[24] For example, https://www.lawyers.com/columbus/ohio/john-albert-gleason-esq-24659051-a/
[25] Ohio Revised Limited Liability Company Act (Ohio Rev. Code §§ 1706.01-1706.84)(E)- If the agent described in division (A) of this section changes the agent's address from the address stated in the records of the secretary of state, the agent or the limited liability company or foreign limited liability company shall file forthwith with the secretary of state, on a form prescribed by the secretary of state, a written statement setting forth the new address.

always created as an "alter ego" shell company.

## The INDIVIDUAL DEFENDANTS are not IMMUNE

113.   The individual Defendants, Hoying and Crawford, do not enjoy immunity from the actions of their LLC corporate entity, Noble Park. First, that corporate veil has been pierced. Noble Park Properties, LLC is an alter ego to the individuals and organized to protect those individuals from the fraudulent business conducted by the hotel that it owns. Secondly, Ohio law governing LLC management specifically makes individual owners liable for monetary relief for a violation of their duties.

## Piercing the Corporate Veil

114.   In Florida law, the case of *North American Clearing v. Brokerage Computer Sys.*, 666 F. Supp. 2d 1299 (M.D. Fla. 2009), "Piercing the corporate veil in Florida traditionally requires two elements: first, "the corporation is in actuality the alter ego of the stockholders," and second, "it was organized or after organization was employed by the stockholders for fraudulent or misleading purposes." *Dania Jai-Alai Palace, Inc. v. Sykes,* 450 So.2d 1114, 1120 (Fla.1984)."

115.   In Ohio law, the case of *Belvedere Condominium Unit Owner's Assn v. RE Roark Cos., Inc.,* 67 Ohio St. 3d 274, 617 N.E.2d 1075, 617 N.E. 1075 (1993) ruled,

> "(The Court) address the alter ego doctrine and the ability of a plaintiff to "pierce the corporate veil" in order to reach an individual shareholder. "That a corporation...is a mere fiction...may be disregarded." Thus, the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

116.   Noble Park is a shell company created as an "alter ego" sham for Hoying and

26

Crawford. There is no sign of it being a real business. It is "fiction". Noble Park has no website or way to contact it other than an obscure "agent" listed with the Ohio Secretary of State ("SoS"), and that agent, Mr. Gleason, no longer represents the LLC. Noble Park has no "separate mind". It was created to "fraudulently" give the appearance or corporate protection to Hoying and Crawford. The property owned by Noble Park, Hoying, and Crawford caused the injuries detailed in the Counts below.

117. The agent listed with the SoS, John A. Gleason, does not respond to phone calls. As detailed above, his address listed on the SoS database [26] is outdated and does not match his current address[27]. Mr. Gleason appears to be a solo practice lawyer catering to real estate clients who need to create shell companies as legal shams. His operations are as shady as they come. As mentioned above, he also denies any current relationship with Noble Park, but no new agent has been registered with the SoS.

118. <u>For those reasons, Noble Park is the definition of an alter ego</u>. There is no difference between the owners and the actions of the shell company. The Noble Park LLC obfuscates the human ownership from the public eye and the numerous disgruntled customers of the Home2 Suites hotel that it owns. That <u>misleads</u> the public.

119. Noble Park's "Home2 Suites by Hilton" hotel conducts business with fraud as its *modus operandi*. As detailed above, it is actually an apartment complex that avoids landlord-tenant laws by masquerading as a hotel. That is fraud. Noble Park was "organized by the stockholders for fraudulent or misleading purposes."

**Hoying and Crawford are Liable Per Ohio Law**

120. According to Ohio Revised Limited Liability Company Act (Ohio Rev. Code §

---

[26] 141 South High Street, Suites 2800-3200, Columbus, Ohio 43215
[27] An August 16, 2024 email from Gleason to Plaintiff listed his address as 4200 Regent Street, Suite 200 Columbus, Ohio 43219

1706.311(E)- Duties of a manager to a limited liability company and its members.): "A manager shall be liable for monetary relief for a violation of the manager's duties under division (C) of this section only if it is proved that the manager's action or failure to act involved an act or omission undertaken with deliberate intent to cause injury to the limited liability company or undertaken with reckless disregard for the best interests of the company."

121.    The allegations of this Amended Complaint, which are to be taken as true at this stage of the pleadings, paint a picture of two individual defendants who are the LLC managers (i.e., Hoying and Crawford) creating a shell company LLC as an alter ego to provide a buffer from the fraudulent business practices of the hotel owned by Noble Park Properties, LLC. Those are deliberate and intentional acts that are not in the best interest of the LLC.

122.    Furthermore, Plaintiff has been in extensive communication with Hoying, Crawford, their agent (Shaner), their lawyer (Mr. Kessler), and their joint venture partner (Hilton). The underlying facts of the grievance (the invasion of privacy, failure to obey Ohio landlord-tenant laws, etc.) have never been disputed by Defendants, and yet Defendants have refused to mitigate damages by failing to negotiate with Plaintiff in good faith. If Noble Park were a publicly traded company, shareholders would have a strong case against Hoying and Crawford for violating their fiduciary duties.[28] For those reasons too, Hoying and Crawford have deliberately acted with reckless disregard for the best interests of the company, thereby violating Ohio LLC law.

---

[28] Plaintiff is an expert on publicly traded companies having worked as an analyst and portfolio manager for the biggest Wall Street banks and hedges funds.

28

## ABOUT the EVIDENCE

123. At no point have any of the facts alleged in this Amended Complaint been disputed by Defendants or their lawyers. If Defendants were to commit perjury to this Court and dispute these facts, Plaintiff has ample evidence that can be produced.

## CHOICE of LAW

124. The Erie Doctrine applies to federal courts. "Federal courts sitting in diversity must apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)", *Braddock v. Orlando Regional Health Care System,* 881 F. Supp. 580 (M.D. Fla. 1995). The Florida law that determines which state law should be applied is referred to as the "most significant relationship" test. *Bishop v. Florida Specialty Paint Co.,* 389 So. 2d 999 (Fla.1980).

125. "Under this test, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless some other state has a more significant relationship to the occurrence or the parties, in which case the other state's law applies. Restatement (Second) of Conflicts of Laws § 146 (1971). *Florida Steel Corp. v. Whiting Corp.,* 677 F. Supp. 1140 (M.D. Fla. 1988).

126. Therefore, Ohio case law will govern the elements required for the claims in this instant case.

## EFFORTS by PLAINTIFF to AVOID LITIGATION

127. Plaintiff has attempted to resolve this matter for two years. He was ignored by layers upon layers of agents hired by Defendants. In-house lawyers for the Hilton corporation replied by showing Plaintiff a copy of a letter that they had sent to Robert Hoying, ordering him personally to resolve the matter (see image below).

128. However, Robert Hoying continued to ignore the problem. When Plaintiff searched

29

court records and found attorneys on other cases related to Defendants, he was eventually referred to a lawyer at Taft Law named Marc Kessler.

129.    Mr. Kessler failed to address the grievances in good faith. It was clear he had put little effort into researching the facts or reading a draft Complaint. Eventually, Mr. Kessler made a written offer that was designed to be insulting.

**Hilton**

Jennifer Guy
Senior Counsel, Dispute Resolution
703 883 3032
Jennifer.Guy@Hilton.com

Hilton Domestic Operating Company Inc.
7930 Jones Branch Drive
McLean, VA 22102
USA

April 16, 2024

**VIA EMAIL ONLY (bhoying@crawfordhoying.com)**

Noble Park Properties, LLC
Attn: Robert C. Hoying
555 Metro Place North, Suite 600
Dublin, OH 43017

Re:    Case Name:    Steven Greer Claim
       Location:     Home2 – Columbus Dublin, OH (ID No. 48318)

Dear Mr. Hoying:

Please find attached a notice of claim letter regarding the matter referenced above, which was recently received by Hilton Domestic Operating Company Inc. ("Hilton") in connection with the franchised property that you own or operate. Pursuant to the terms of the Franchise Agreement relating to your ownership or operation of the subject property, I am tendering this claim to you for resolution. *Please take all steps necessary to resolve and otherwise protect Hilton's interests in this matter.*

Should you have any questions, please do not hesitate to contact me. Thank you for your prompt attention to this matter.

Regards,

Jennifer Guy

JG/lb

cc:    Chad Eckard, General Manager (via email)

30

## COUNT 1: NEGLIGENCE

130. Plaintiff realleges as though fully set forth at length, and incorporates herein by reference, all of the allegations in ¶¶ 1-128 and statements made above and contained herein.

131. Defendant Noble Park Properties, LLC is a shell company and alter ego of the individual defendants, Hoying and Crawford, who act in unison as co-owners and co-managers. Therefore, allegations in this Count apply to all Defendants.

132. All Defendants are responsible for their agent, Shaner Group, that staffs and manages the property called Hilton Home2 Suites in Dublin, Ohio. "Hilton Domestic Operating Company Inc. or its subsidiaries" and/or "Hilton Worldwide Holdings Inc.," are also agents and/or joint venture partners of/with Defendants.

133. In Ohio law, "To prevail on a negligence claim, Plaintiffs must demonstrate the traditional negligence elements of duty, breach, causation, and injury. *See Briney v. Sears, Roebuck & Co.,* 782 F.2d 585, 587 (6th Cir.1986)" *McConnell v. Cosco, Inc.,* 238 F. Supp. 2d 970 (S.D. Ohio 2003). These elements have been met (see underlined sections below).

134. The statute of limitations for the tort of negligence is two-years. This Complaint has been filed in less time.

135. Defendants (Robert Hoying, Brent Crawford, and Noble Park Properties, LLC), acting as the "principle" employers, individually, and by and through its agents and/or joint venturers (Hilton Domestic Operating Company Inc. is the joint venture and Shaner Hotel Group LP is the agent), had a duty to exercise reasonable and ordinary care, and caution in and about the ownership, management, maintenance, supervision, control and operation of the Dublin, Ohio "Home2 Suites" and its reservation system and each of its employees, agents, servants and independent contractors, all to the benefit of guests, patrons, business invitees, and persons like Plaintiff.

31

not limited to, severe and permanent emotional distress, embarrassment, and a loss of earning capacity. Plaintiff has not stayed in a hotel since the incidents in this case as a result of the severe emotional trauma. Plaintiff suffers insomnia and flashbacks in his home. Being forced to file this Complaint in a public forum is embarrassing and further severe emotional distress.

143.    WHEREFORE, Plaintiff Steven Greer prays for judgment in his favor and against all Defendants in an amount in excess of $2,000,000 (Two Million Dollars)[30], plus costs and interest, and any other costs this Court deems is fair.

## COUNT 2: INVASION of PRIVACY

144.    Plaintiff realleges as though fully set forth at length, and incorporates herein by reference, all of the allegations in ¶¶ 1-128 and statements made above and contained herein.

145.    Defendant Noble Park Properties, LLC is a shell company and alter ego of the individual defendants, Hoying and Crawford, who act in unison as co-owners and co-managers. Therefore, allegations in this Count apply to all Defendants.

146.    All Defendants are responsible for their agent, Shaner Group, that staffs and manages the property called Hilton Home2 Suites in Dublin, Ohio. "Hilton Domestic Operating Company Inc. or its subsidiaries" and/or "Hilton Worldwide Holdings Inc.," are also agents and/or joint venture partners of/with Defendants.

147.    In Ohio law, the statute of limitations for invasion of privacy (an intentional tort) is four years. See O.R.C. 2305.09(D). In Florida law also, the statute of limitations for invasion of privacy (an intentional tort) is four years. See Florida Statute, Title VIII, Chapter 95, Section 11 (2021).

148.    In *Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340, the Ohio

---

[30] A dollar amount found to be reasonable in a similar case of *Andrews v. Marriott*, Case No. 11c4831 Circuit Court for Davidson County, Tennessee, 2011

33

Supreme Court first recognized a cause of action for invasion of privacy. The court listed three instances in which the claim could be brought: "An actionable invasion of the right of privacy is [1] the unwarranted appropriation or exploitation of one's personality, [2] the publicizing of one's private affairs with which the public has no legitimate concern, or [3] the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

149.    The Ohio Supreme Court has later relied upon the "Restatement of Torts" to define invasion of privacy.

> "Restatement of the Law, Second, Torts, § 652 Copyright (c) 1977, The American Law Institute §652 B Intrusion Upon Seclusion
>
> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.
>
> Comments:
> a. The form of invasion of privacy covered by this Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs. It consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man.
> b. The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or..." *Jackson v. Playboy Enterprises, Inc.*, 574 F. Supp. 10 (S.D. Ohio 1983).

150.    Therefore, this tort perfectly applies to the instant SAC. Defendants "forced their way into Plaintiff's hotel room" just as the "Restatement" treatise explicitly defines.

151.    The 11th Cir. recognizes this "Restatement" as law. In *Phillips v. Smalley Maint. Servs., Inc.*, 711 F.2d 1524, 1533 (11th Cir. 1983), "Does the law of the State of Alabama recognize the tort of invasion of privacy in the form described in § 642B, *Restatement (Second) of Torts* (1977) and set forth below?... *Restatement (Second) of Torts*, § 652B, and

34

its Comment, enunciate a clear and concise definition, and establish the perimeter, of the "wrongful intrusion" tort, which, when read in light of our own case law, affords meaningful guidelines for the adjudication of such actions as alleged by the instant Plaintiff. Consequently, we answer the Court of Appeals' first inquiry in the affirmative."

152.    Defendants (Robert Hoying, Brent Crawford, and Noble Park Properties LLC), acting as the "principle" employers, individually, and by and through its agents and/or joint venturers, had a duty to exercise reasonable and ordinary care, and caution in and about the ownership, management, maintenance, supervision, control and operation of the Dublin, Ohio "Home2 Suites" and its reservation system and each of its employees, agents, servants and independent contractors, all to the benefit of guests, patrons, business invitees, and persons like Plaintiff.

153.    Defendants, by and through their agents, employees, servants, and/or independent contractors, were negligent in their acts and/or omissions by allowing incompetent managers to run the business operations resulting in a breaking and entering of Plaintiff's hotel room while he was in bed and undressed, as a female employee stood and witnessed the actions (see ¶¶ 66-72).

154.    Defendants had no legal right to enter Plaintiff's room. There was no emergency reason to open Plaintiff's door either. "Single-occupancy hotel rooms are meant as a private refuge" and hotel employees entering guests rooms has been ruled to be invasion of privavcy. See, for examples, *Sowards v. Norbar, Inc.*, 78 Ohio App. 3d 545, 605 N.E.2d 468 (Ct. App. 1992)., and *Lynn v. Allied Corp.*, 41 Ohio App. 3d 392, 536 N.E.2d 25 (Ct. App. 1987).

155.    The intrusions by Defendants were and are objectionable and offensive to any reasonable person or jury. This element is to be determined by a jury.

35

156.    As set forth above, the intrusions by Defendants were specific to Plaintiff's private information and private matters (i.e., his private apartment dwelling).

157.    As a direct and proximate result of the intrusion of seclusion and invasion of privacy by Defendants, Plaintiff has suffered and continues to suffer from, including but not limited to, severe and permanent emotional distress, embarrassment, and a loss of earning capacity.

158.    WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants in an amount in excess of $2,000,000 (Two Million Dollars)[31], plus costs and interest, and any other costs this Court deems is fair.

## COUNT 3: BREACH of CONTRACT

159.    Plaintiff realleges as though fully set forth at length, and incorporates herein by reference, all of the allegations in ¶¶ 1-128 and statements made above and contained herein.

160.    Defendant Noble Park Properties, LLC is a shell company and alter ego of the individual defendants, Hoying and Crawford, who act in unison as co-owners and co-managers. Therefore, allegations in this Count apply to all Defendants.

161.    All Defendants are responsible for their agent, Shaner Group, that staffs and manages the property called Hilton Home2 Suites in Dublin, Ohio. "Hilton Domestic Operating Company Inc. or its subsidiaries" and/or "Hilton Worldwide Holdings Inc.," are also agents and/or joint venture partners of/with Defendants.[32]

### Which State Contract Law Should be Applied?

162.    There was no clause or term in the explicit contract between Plaintiff and Defendants that specified the prevailing law to be applied in case of a dispute. Therefore, this Court will

---

[31] A dollar amount found to be reasonable in a similar case of *Andrews v. Marriott*, Case No. 11c4831 Circuit Court for Davidson County, Tennessee, 2011

[32] Florida residents can also make reservations with Defendants through other travel Internet companies, such as Expedia, rather than go through the Hilton reservation system. In this instant case, Plaintiff used the Hilton system.

apply the Erie Doctrine.

163.   Favoring the application of Florida contract law is the fact that Plaintiff was domiciled in Florida when the contract was made, and Defendants knew that when the hotel reservation was made. Favoring the application of Ohio contract law is that the services to be provided were in Ohio.

## The Elements of a Contract

164.   Florida and Ohio law define the elements of a valid contract as 1) Offer, 2) Mutual Consent, 3) Consideration, 4) Legality of the contract terms.[33] The parties must also have legal capacity to agree to a contract and the contract must be conscionable to be enforceable.

### The Express Contract

165.   An express written contract was formed on February 7th, 2022 after Plaintiff reserved the room for five days. The terms of the contract were delivered via email (EX. 1).

166.   Plaintiff was offered the terms of the contract via the Hilton reservation system (see ¶¶ 163-165 and EX. 1). The consideration was the hotel fee. Plaintiff fulfilled that element when he paid for the first week in advance (see ¶ 54 and EX. 1), and then paid in full every week thereafter (Id). Payments totaled at least $21,692 for the stay that lasted from February of 2022 through September of 2022. Mutual consent occurred when Defendants accepted Plaintiff's money and allowed him to check in to the hotel, then continued accepting payments. Creating a contract for a hotel stay is a legal act.

167.   That express written contract makes no mention of Defendants. Only "Hilton" and "Hilton Domestic Operating Company Inc. or its subsidiaries" are spelled out. However, because those Hilton entities are agents and/or joint venture partners with Defendants, and

---

[33] Of note, Florida is the only state to have a quirky "material breach" component, but other federal courts have been unable to understand it. See Florida Bar Journal Vol. 90, No. 3, March 2016, Pg 36

Plaintiff paid Defendants in person when he physically checked in, as opposed to paying Hilton via the Internet, that makes Defendants also part of the express contract and obligated to uphold the terms of the contract.

## The Implied Contract

168.    Plaintiff stayed approximately seven months, or long past the five days of the express written contract. The local Dublin property, through Defendants' Shaner agents managing it, took Plaintiff's payments via credit card approximately every two weeks, for a daily rate of approximately $100. Plaintiff was never asked to sign any new express contracts. By accepting payment and providing services, an implied contract with the same terms as the express contract was made with Defendants.

## Definition of Breach of Contract

169.    In Florida, *FWF, INC. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342 (S.D. Fla. 2007) *inter alia* define breach as, "The elements of a breach-of-contract claim are: (1) a valid contract; (2) a material breach; and (3) damages."

170.    In Ohio, *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 650 N.E.2d 863, 1995 Ohio 61 (1995), *inter alia* define breach as, "To prove a breach of contract claim, a plaintiff must show "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Nilavar,* supra, at 483, 738 N.E.2d 1271, quoting *Doner v. Snapp* (1994), 98 Ohio App.3d 597, 600, 649 N.E.2d 42."

## How the Contract was Breached

171.    Nowhere in the contract process (i.e., neither expressly (EX. 1) nor implied) did Plaintiff consent to searches of, or intrusions into, his room by hotel staff with no advanced notice. Nowhere in the contract was Plaintiff notified that housekeeping would not clean the room daily.

172.     Plaintiff rightly had an expectation of the hotel to clean the room and change the bed linen daily. It is standard industry practice and it is codified in Ohio law. O.R.C. Section 3731.12(A) "Beds and bedding" states, "…All sheets and pillow slips used on any furniture designed for sleeping shall be white or off-white in color and shall be washed daily if requested by a guest…" Section 3731.13 states, "All bedding used in any hotel must be thoroughly aired, disinfected, and kept clean…"

173.     There were never special Ohio laws passed during the COVID era to exempt Defendants from cleaning the room. *Arguendo*, even if there were, the Ohio Department of Health rescinded all COVID orders in 2021, long before Plaintiff checked in the next year in 2022.[34, 35]

174.     Plaintiff rightly had an expectation of the hotel having clean carpets. It too is the law. O.R.C. Section 3731.13 states, "…All floors, carpets, and equipment in hotels, and all walls and ceilings shall be kept in sanitary condition."

175.     Plaintiff rightly had an expectation of privacy in his room. "[T]he Fourth Amendment protection against unreasonable searches and seizures is not limited to one's home, but also extends to such places as hotel or motel rooms.'" *State v. Oliver*, 2018-Ohio-3667, 112 N.E.3d 573, ¶ 31 (8th Dist.), quoting *United States v. Bautista*, 362 F.3d 584, 589 (9th Cir.2004). (Additional quotations omitted.) Thus, "[a] registered hotel guest has a reasonable expectation of privacy in his room under the Fourth Amendment." *Oliver*. While the Fourth Amendment applies to protections against police (i.e., the government) illegally searching hotel rooms, the logic used in court decisions explains why people have an expectation of privacy against any form of intrusion into a hotel room.

---

[34] https://odh.ohio.gov/media-center/odh-news-releases/odh-news-release-06-02-21
[35] COVID was, and still is, used as a pretext for hotels to cut costs by hiring fewer staff to perform fewer services. https://www.cbsnews.com/news/hotels-end-basic-amenities-no-more-housekeeping-skimpflation/

176.   Defendants <u>breached the contract by not providing a safe and private hotel room</u>. Instead, they provided incompetent services by negligent and incompetent hotel staff (see ¶¶ 59, 63-65) who illegally entered Plaintiff's room (see ¶¶ 66-72) and ended his extended-stay with a demand that Plaintiff leave. Defendants had no justification for demanding Plaintiff to leave.

177.   Defendants breached the contract by not cleaning the room and bed linen daily. (see ¶¶ 59). By not doing so, they violated O.R.C. Section 3731.12(A) and 3731.13. By violating the law, they also breached the contract.

178.   Defendants breached the contract by not providing clean and sanitary carpets. (see ¶¶ 60). By not doing so, they violated O.R.C. Section 3731.13. By violating the law, they also breached the contract.

179.   Defendants also breached the contract by failing to tell Plaintiff that his stay would be limited to 270-days (see ¶¶ 55, 56). Home2 Suites is advertised as an extended-stay hotel, complete with a kitchen. No limitation to length of stay was ever specified or implied. Defendants accepted payment after payment from Plaintiff (EX. 1) without ever suggesting that his stay was limited. Therefore, Plaintiff was "offered" an extended-stay hotel as part of the contract and those services were not provided.

180.   Plaintiff was also forced to leave sooner than he otherwise would have chosen (see ¶¶ 87), meaning that the hotel did not provide the extended-stay that was advertised.

181.   Had Plaintiff known that he could not stay indefinitely, he might have moved into a normal apartment or different hotel given his large amount of personal belongings rather than forming the contract.

182.   Defendants also breached the contract by failing to tell Plaintiff that the property in which he was staying was not owned or operated by Hilton. The reservation system and

signage all state "Hilton" and not Noble Park. Hilton operates the particular Internet reservation system used by Defendants, acting as their agent and/or joint venture partner, but the property and Shaner staff are not Hilton.[36] There is a material difference in quality of property between a flagship Hilton-operated property and one like Defendants' have.

183.   Plaintiff suffered damages by paying for a service that he did not receive. His hotel room was not cleaned per the law (see ¶¶ 59, 175), nor was the carpeting. (see ¶¶ 60, 176). His move to a different hotel was a considerable undertaking. The invasion of privacy also caused Plaintiff to suffer damages.

184.   Plaintiff was unable to easily move and find a better hotel because he had a large amount of personal belongings with him equivalent to a studio apartment. U.S. Mail was also being forwarded to him. It was not as simple as checking out and taking his business elsewhere. Plaintiff was overwhelmed with the care of his elderly father with dementia that required Plaintiff to drive 60-miles roundtrip each day, at least, and act as the primary caregiver. Uprooting from his room was not an easy option.

185.   WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants in an amount in excess of $22,000 (Twenty Two Thousand U.S. Dollars) plus costs and interest, and any other costs this Court deems is fair.

## COUNT 4: OHIO CSPA VIOLATION

(Ohio R.C. §1345.02 Consumer Sales Practices Act.- Unfair or Deceptive Act)

186.   Plaintiff realleges as though fully set forth at length, and incorporates herein by reference, all of the allegations in ¶¶ 1-128 and statements made above and contained herein. Specific allegations are listed by paragraph below to comply with the Order.

187.   Defendant Noble Park Properties, LLC is a shell company and alter ego of the

---

[36] The email from Hilton executives to Plaintiff (see ¶¶ 126), which contained an attached letter sent from Hilton to Defendants, establishes the agent and/or joint venture partner relations of Hilton.

41

individual defendants, Hoying and Crawford, who act in unison as co-owners and co-managers. Therefore, allegations in this Count apply to all Defendants.

188. All Defendants are responsible for their agent, Shaner Group, that staffs and manages the property called Hilton Home2 Suites in Dublin, Ohio. "Hilton Domestic Operating Company Inc. or its subsidiaries" and/or "Hilton Worldwide Holdings Inc.," are also agents and/or joint venture partners of Defendants.

189. Defendants (Robert Hoying, Brent Crawford, and Noble Park Properties LLC), acting as the "principle" employer, individually, and by and through its agents and/or joint venturers, committed an unfair and deceptive act in its consumer transaction with Plaintiff in violation of Ohio R.C. §1345.02 Consumer Sales Practices Act ("CSPA").

190. Specifically, Defendants represented to Plaintiff that they would provide a safe and private hotel room for an extended-stay because the property was presented as a trusted Hilton property (see ¶ 50 and EX. 1). In fact, the "hotel" was not owned or operated by Hilton. The so-called "Hilton" property was actually Defendants' property (see ¶ 15, 18, 21, 22) managed by their agent Shaner, and offered to Plaintiff as a bait-and-switch scam.

191. Defendants, through their agent Shaner, provided multiple incompetent managers, one of whom was fired (see ¶¶ 64-67), and another of whom illegally broke into Plaintiff's apartment (see ¶¶ 66-72).

192. Defendants, through their agent Shaner, did not provide the legally required clean rooms (O.R.C. Section 3731.12(A) "Beds and bedding", see ¶¶ 59) and carpets (O.R.C. Section 3731.13, see ¶¶ 60), violating Ohio law.

193. Hence, Defendants violated the "deceptive" section of Ohio R.C. §1345.02(B)(2), "That the subject of a consumer transaction has...performance characteristics...or benefits that it does not have".

42

194.   Defendants were also unfair and deceptive when they engaged The Cincinnati Insurance Company, which led to that insurance company calling Plaintiff and investigating, and then stating in writing that the entire insurance claim was initiated Plaintiff when it was not. When asked directly, the lawyer at the time for Defendants, Kessler, denied any involvement, which was a lie and deceptive. An emailed cease-and desist (see ¶ 102) demanding that the insurance denial letter be corrected went ignored, further violating the CSPA requirement to make amends when demanded.

195.   As a result of Defendants' violation of §1345.02, Plaintiff has suffered actual economic damages of more than $22,000, (i.e., that being the amount paid for the long-term stay). The CSPA allows Plaintiff to recover three-times those actual damages.

196.   WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants in an amount in excess of $66,000 (Sixty Six Thousand U.S. Dollars) plus costs and interest, and any other costs this Court deems is fair.

## JURY DEMAND

197.   Plaintiff requests a trial by a jury of his peers.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against all Defendants as follows:

A.      On **Count 1 (Negligence)**, Plaintiff demands judgment in his favor in the amount of $2,000,000 (two-million dollars), his attorney fees, and costs incurred in the prosecution of this action.

B.      On **Count 2 (Invasion of Privacy)**, Plaintiff demands judgment in the amount of $2,000,000 (two-million dollars), plus his attorney fees and costs incurred in the prosecution of this action.

C.      On **Count 3 (Breach of Contract)**, Plaintiff demands judgment in his favor for $22,000 (sixty-six thousand dollars), plus the cost of inflation at 20% per year, plus attorney fees, and costs incurred in the prosecution of this action.

D.      On **Count 4 (CSPA Violation)**, Plaintiff demands judgment in his favor for $66,000 (sixty-six thousand dollars), plus the cost of inflation at 20% per year, plus attorney fees, and costs incurred in the prosecution of this action.

Respectfully submitted,

Steven Greer, *pro se*
Phone (212) 945-7252
steve@greerjournal.com

44