UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 24-14258-CIV-CANNON

**STEVEN GREER**,

     Plaintiff,

v.

**ROBERT HOYING, BRENT CRAWFORD,**
and **NOBLE PARK PROPERTIES, LLC.**,

     Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND PERMITTING FINAL REPLEADING

**THIS CAUSE** comes before the Court upon Defendants' Motion to Dismiss Plaintiff's Complaint (the "Motion") under Rule 12(b)(2) for lack of personal jurisdiction, or alternatively, for failure to state a claim under Rule 12(b)(6) [ECF No. 29]. Fed. R. Civ. P. 12(b)(2); Fed. R. Civ. 12(b)(6). The Court has reviewed the Motion, Plaintiff's Second Corrected Amended Complaint [ECF No. 27], the full record, and the applicable law. Following review, the Motion [ECF No. 29] is **GRANTED** in accordance with this Order; Plaintiff's Second Corrected Amended Complaint is **dismissed without prejudice** for lack of personal jurisdiction. In light of this Order, the Court declines to address Defendants' Rule 12(b)(6) and 12(b)(3) challenges.

### BACKGROUND AND PROCEDURAL HISTORY[1]

This case arises out of Plaintiff's more than seven-month stay in a "Home2 Suites by Hilton" hotel in Dublin, Ohio (the "Hotel") [ECF No. 27 ¶ 63]. Defendant Noble Park Properties LLC—co-owned by Defendants Robert Hoying and Brent Crawford—owns the Hotel [ECF No.

---

[1] These facts are accepted as true and taken from Plaintiff's Corrected Second Amended Complaint and attachments thereto [ECF No. 27; ECF No. 27-1].

27 ¶ 107]. In short, Plaintiff needed to book a hotel on short notice, and since he was familiar with the Hilton Hotel chain, he went to Hilton's main website and booked a one-week stay at the Hotel [ECF No. 27 ¶¶ 49-51]. He checked in on February 16, 2022 [ECF No. 27 ¶ 52]. For the next seven months, he renewed his stay every two weeks, and "was never told that he would have to leave at some point" [ECF No. 27 ¶ 55]. Plaintiff maintains that he stayed at the Hotel without incident until, as Plaintiff puts it, the manager of housekeeping "defamed him" to the new Hotel manager Morris Siyman by informing Siyman that Plaintiff was a "long-term-stay-guest" [ECF No. 27 ¶¶ 63-66].

Things went downhill from there. On September 12, 2022, at 10:00 A.M., Mr. Siyman knocked on Plaintiff's door "claiming to be housekeeping" [ECF No. 27 ¶ 67]. Plaintiff was unclothed at the time, so he told Mr. Siyman to come back another time, but Mr. Siyman opened the door nonetheless, with another female hotel employee in tow, and told Plaintiff: "I am the regional manager . . . the hotel called me . . . the management . . . we are going to have to ask you to leave" [ECF No. 27 ¶ 69]. Plaintiff told him that they could speak further once Plaintiff was dressed; Mr. Siyman waited outside the door of his room [ECF No. 27 ¶ 69]. Plaintiff claims that he "was greatly alarmed and suffered severe mental anguish, embarrassment, and humiliation from this illegal break-in and trespassing into his apartment" [ECF No. 27 ¶ 70]. He maintains that since he was a long-term resident in the hotel, he is protected under landlord-tenant law, and therefore this interaction qualifies as "an act of illegal entry by a landlord" [ECF No. 27 ¶ 72].

As a result of the foregoing, Plaintiff filed a *pro se* six-count Complaint on August 12, 2024 [ECF No. 1]. The Court dismissed it and permitted repleading because (1) the Complaint failed to sufficiently allege the citizenship of the corporate and/or limited liability company Defendants; (2) the Complaint was an impermissible shotgun pleading; and (3) the Complaint

failed to follow Federal Rule of Civil Procedure 10(a) [ECF No. 7]. Fed. R. Civ. P. 10 (requiring a party to state its claim in numbered paragraphs). Plaintiff then filed an amended complaint [ECF No. 8] but then sought leave to file the operative Corrected Second Amended Complaint [ECF Nos. 25, 27]. The Corrected Second Amended Complaint features four counts and asserts claims of negligence, invasion of privacy, breach of contract, and violation of the Ohio Consumer Sales Practices Act against Defendants Noble Park, Hoying, and Crawford [ECF No. 27]. Plaintiff previously named Home2 Suites by Hilton in his initial Complaint in this action (along with other corporate entities) but dropped Home2 Suites by Hilton upon repleading [ECF Nos. 1, 8]. In response, Defendants filed the instant motion to dismiss, arguing that the Court lacks personal jurisdiction over Defendants' "meritless lawsuit" [ECF No. 29 p. 2].

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). "A plaintiff seeking to obtain jurisdiction over a nonresident defendant initially need only allege sufficient facts to make out a prime facie case of jurisdiction." *Posner v. Essex Ins. Co., Ltd*., 178 F.3d 1209, 1214 (11th Cir. 1999). The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *See Consol. Dev. Corp. v. Sherritt, Inc*., 216 F.3d 1286, 1291 (11th Cir. 2000); *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). "[W]here the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present."). *Oldfield v. Pueblo De Bahia Lora, S.A*., 558 F.3d 1210, 1217 (11th Cir. 2009).

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state

Case 2:24-cv-14258-AMC   Document 35   Entered on FLSD Docket 07/16/2025   Page 4 of 10

CASE NO. 24-14258-CIV-CANNON

long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Florida's long-arm statute provides for both specific and general jurisdiction. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). "[F]irst, section 48.193(1)(a) lists acts that subject a defendant to specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida." *Id*. "[S]econd, section 48.193(2) provides that Florida courts may exercise general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida— if the defendant engages in 'substantial and not isolated activity' in Florida." *Id*. (quoting Fla. Stat. § 48.193(2)). Specific jurisdiction exists when "the alleged activities or actions of the defendant are directly connected to the forum state"; general jurisdiction exists when "the defendant's connection with the forum state is so substantial that no specific or enumerated relationship between the alleged wrongful actions and the state is necessary." *Marina Dodge, Inc. v. Quinn*, 134 So.3d 1103, 1106 (Fla. Dist. Ct. App. 2014) (internal citations omitted)). "Because the construction and application of the Florida Long–Arm statute is a question of Florida law, [federal courts] are required to construe the Long–Arm provisions as would the Florida Supreme Court." *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.*, 421 F.3d 1162, 1166–1167 (11th Cir. 2005).

Upon finding a statutory basis for the exercise of personal jurisdiction, a district court next must "determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Madara*, 916 F.2d, at 1514 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

**DISCUSSION**

Defendants move to dismiss on the grounds that the Court lacks personal jurisdiction over them, venue is improper, and that all of Plaintiffs claims fail to state a claim upon which relief can be granted [ECF No. 29]. Because the Court determines that it lacks personal jurisdiction over the Defendants, it need not reach the Motion's remaining arguments.

Beginning with the statutory analysis—part one of the two-step jurisdictional inquiry—the Court lacks both general and specific jurisdiction over Defendants under Florida's long arm statute. *Carmouche*, 789 F.3d at 1204. Plaintiff argues that the Court has specific personal jurisdiction over Defendants under sections 48.193(1)(a)(1) (operating a business venture in Florida) and 48.193(1)(a)(7) (breaching a contract in Florida by failing to perform required acts in Florida), as well as general jurisdiction under Section 48.193(2) (engaging in substantial and not isolated activity in the state) of Florida's long arm statute [ECF No. 27 pp. 9, 10; ECF No. 30 p. 8]. Fla Stat. §§ 48.193(1)(a)(1), (1)(a)(7), (2). Taking each in turn, no provision applies here.

First, Plaintiff argues that section 48.193(1)(a)(1)—"operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state"—applies because Defendants' "business in Florida" is the Hilton Corporation's "hotel reservation systems." In other words, Plaintiff surmises, Defendants conduct business in Florida through the Hotel's parent-website, on which customers can book reservations at any Hilton Hotel [ECF No. 27 ¶¶ 27–32; ECF No. 30]. Although Home2Suites by Hilton is no longer a defendant in this case [ECF No. 8 (amending the complaint and removing Home2Suites by Hilton as a party)], the Hotel is a Hilton franchise, and so Defendants' customers can reserve rooms on Hilton's main website [ECF No. 27 ¶ 131]. While Home2Suites by Hilton may "do business" in Florida, the Court is not convinced that Defendants do. The Court reasons below.

5

To determine whether a defendant "conducts business in Florida" for purposes of personal jurisdiction, "the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam). Florida courts look to: the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the possession and maintenance of a license to do business in Florida, and the percentage of overall revenue gleaned from Florida client. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (collecting cases).

As currently pled, Defendants are not alleged to have an office in Florida, to possess specific licenses to do business in Florida, or to generate substantial revenue in Florida [ECF No. 27]. Rather, Defendants utilize the website of their franchisor, Home2Suites by Hilton, which can be accessed around the world. Given the nature of the hotel industry, presumably some users may be located in Florida when they make a reservation, but it is equally likely that they are in every other state around the Country. Accordingly, the ability for Floridian would-be plaintiffs to make reservations at Defendants' Hotel through the Hilton's website is not enough on its own to establish that Defendants conduct business in Florida within the meaning of section 48.193(1)(a)(1). *See Trs. of Columbia Univ. In City of New York v. Ocean World, S.A.*, 12 So. 3d 788, 795 (Fla. Dist. Ct. App. 2009) (citing *McBee v. Delica Co.,* 417 F.3d 107, 124 (1st Cir. 2005) ("The mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is visible.")). And, even if Plaintiff's allegations somehow satisfied Florida's long-arm statute, which they do not, allowing a franchisor website to give rise to personal jurisdiction without evidence of any other ties to the forum state would widen the jurisdictional aperture to the entire country and contradict the constitutional requirement that

Plaintiff's claim arise out of defendants' contacts with the forum state and qualify as purposeful rather than random or attenuated. *See Oldfield*, 558 F.3d at 1223 (rejecting, under the Due Process Clause of the Fifth Amendment, Plaintiff's effort to assert personal jurisdiction against a foreign defendant based on Plaintiff's contacts with Defendant's internet website alone); *id.* at 1223–24 ("A finding that such a tenuous relationship between Pueblo's relevant contacts and the negligence of the captain who was not employed or controlled by Pueblo somehow satisfied the relatedness requirement would not only contravene the fairness principles that permeate the jurisdictional due process analysis, but would also interpret the requirement so broadly as to render it virtually meaningless."); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("This "purposeful availment" requirement ensures that a defendant will not be hauled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts). Defendants do not "conduct business" in Florida sufficient to support a finding of specific personal jurisdiction.

Second, Plaintiff argues that section 48.193(1)(a)(7) of Florida's long arm statute, aimed at those who "breach [] a contract in this state by failing to perform acts required by the contract to *be performed in this state*," gives rise to personal jurisdiction over the Defendants [ECF Nos. 27, 30]. Fla Stat. § 48.193(1)(a)(7) (emphasis added). The cited contract in support of this claim is Plaintiff's Hotel room reservation, which Plaintiff effectuated on the Hilton Corporation's website while at home in Florida, before traveling to Ohio [ECF No. 27 ¶¶ 165-167]. Plaintiff alleges that Defendants breached this contract by failing to clean his hotel room daily, failing to clean the common area carpets, and failing to ensure his privacy in his hotel room, among other alleged informational violations (such as failing to inform him that the Hotel was not owned by the Hilton Corporation and that his stay was limited to 270 days) [ECF No. 27 ¶¶ 171–182].

These facts are insufficient to confer personal jurisdiction under Fla. Stat. § 48.193(1)(a)(7). Plaintiff's argument overlooks the requirement that section 48.193(1)(a)(7) requires that the contract "be performed in [Florida]." Fla Stat. § 48.193(1)(a)(7). In other words, the behavior that constitutes the breach must be within the state of Florida. *Williamson v. Prime Sports Mktg.*, LLC, 314 So. 3d 480, 484 (Fla. Dist. App. 2020). Yet Plaintiff's alleged breaches—the unclean room and carpets and the privacy incident in his hotel room—all occurred at the Hotel in Ohio. Even if the Court construes Plaintiff's Complaint liberally—that Defendants' failure to inform Plaintiff of his maximum stay upon reserving a room should have "been performed in Florida"—Hilton's room reservation does not require such disclosures, meaning there was no contract requirement to be performed in Florida [ECF No. 27-1]. Ultimately, Plaintiff has not shown that the alleged contract violations give rise to personal jurisdiction over Defendants.

Third and finally, Plaintiff alleges that Defendants are engaged in "substantial activity" "in all 50 states [because] they advertise and accept reservations over the Internet," such that the Court has general personal jurisdiction over Defendants under section 48.193(2) [ECF No. 30 pp. 8-9]. Fla Stat. § 48.193(2). This argument fails. The text of section 48.193(2) requires a "showing of 'continuous and systematic general business contacts'" with this state. Fla Stat. § 48.193(2); *see Carib–USA Ship Lines Bahamas Ltd. v. Dorsett*, 935 So. 2d 1272, 1275 (Fla. Dist. App. 2006) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). "The requirement of continuous and systematic general business contacts establishes a much higher threshold than the "minimum contacts" required to assert specific jurisdiction, for the facts required to assert this general jurisdiction must be 'extensive and pervasive." *Am. Overseas Marine Corp. v. Patterson*, 632 So. 2d 1124, 1127–28 (Fla. Dist. Ct. App. 1994) (internal citations

and quotations omitted). Therefore, given the Court's analysis above, Defendants do not have ties with Florida that support general jurisdiction.[2]

For these reasons, specific jurisdiction does not exist as to Defendants under sections 48.193(1)(a)(1) or 48.193(1)(a)(7). Nor does general jurisdiction exist under section 48.193(2). Without a statutory basis for personal jurisdiction, the Court need not further address whether personal jurisdiction over Defendants would violate the Due Process Clause of the Fifth Amendment. *Madara*, 916 F.2d at 1514 (noting the first step is to find a statutory basis for personal jurisdiction).

## **CONCLUSION**

For the reasons states above, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss [ECF No. 29] is **GRANTED** in part in accordance with this Order.

2. Plaintiff's Second Correct Complaint is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction. The Court expresses no opinion on the merits of Plaintiff's claims, which may be raised as permitted by law in a proper forum.

3. Plaintiff's "Notice Regarding Discovery" [ECF No. 34], to the extent it seeks judicial relief, is **DENIED AS MOOT** in light of this Order.

---

[2] In support of his assertion of personal jurisdiction, Plaintiff cites *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), a case allowing personal jurisdiction over a foreign defendant based on a website that sold passwords and entered into contracts with internet providers to furnish services to customers in the forum state. *Id.* at 1125–26; [ECF No. 30 p. 9]. *Zippo* does not help Plaintiff's cause—for two reasons. First, the court in *Zippo* applied a "sliding scale" test for internet cases which the Eleventh Circuit has specifically declined to adopt. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 n.10 (11th Cir. 2013) (electing instead to apply the three-part Due Process Clause test established in *Burger King*, 471 U.S. at 472–73). And second, any rationale adopted from *Zippo*, even if permitted, still would require Plaintiff to satisfy Florida's long-arm statute, which it has not done in this case.

4. The Clerk is **DIRECTED TO CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 15th day of July 2025.

_____
**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

**Steven Greer**
7029 Maidstone Drive
Port St. Lucie, Florida 34986
(212) 945–7252
steve@greerjournal.com